W. Preston Hix, Respondent, v. Edison Electric Light Company, Appellant.

*Evidence — proof of a transfer of rights acquired under a contract — order of proof.*

The Edison Electric Light Company of New York entered into an agreement to pay as compensation for the services of a "promoter" in organizing the Edison Electric Light Company of Philadelphia, of the stock of which latter corporation the former was to receive a certain part, a certain percentage of the stock thus received and a percentage of all future increases of stock. In an action brought by the "promoter" against the Edison Company of New York to recover such percentage upon certain increases of stock of the Philadelphia company, it appeared that the General Electric Company had assumed to modify the arrangement for the stock which the Edison Company of New York was to receive from the Philadelphia company by remitting the claim of the Edison Company of New York to a part of such increase of stock, and, in evidence of its authority so to do, a letter was put in evidence by the "promoter" written by the president of the Philadelphia company to the Edison Company of New York, stating that the Philadelphia company had resolved to issue a stock dividend of twenty per cent on its capital, provided the General Electric Company of New York would allow the issue of $200,000 free of the ten per cent royalty provided by the contract of July fifteenth. This contract of July fifteenth recited that the General Electric Company, acting for the Edison Electric Light Company of New York (the defendant) and for all other companies of which it now has the control, agreed, etc. In answer to this letter the General Electric Company wrote : "Referring to your letter of September twenty-sixth, addressed to the Edison Electric Light Company, would say that we will consent to waiving our royalty of ten per cent to your increase of stock, $200,000, created for the purpose of paying stock dividend."

*Held,* that this evidence established an acquiescence by inaction on the part of the Edison Company of New York, and action by the General Electric Company, furnishing as strong proof as could be furnished indirectly of the relation of the two companies, and that the General Electric Company stood in the place of the Edison Company of New York, and that such proof when coupled with proof of possession by the General Electric Company of an obligation of the Philadelphia company, received by the Edison Company of New York in part performance of the contract between the Philadelphia company and the Edison Company of New York, which the General Electric Company surrendered to the Philadelphia company when an increase of capital stock was made by that company, justified the reception in evidence of letters written on behalf of the General Electric Company to third persons stating its ownership of the Edison Company of New York, and of the stock, and of proof of a waiver by the General Electric Company of a part of the royalty secured to the Edison Company of New York by its original contract with the Philadelphia company ;

and also of proof of agreements between the General Electric Company and
the Philadelphia company with reference to the affairs between the latter
company and the Edison Company of New York.

INGRAHAM, J., dissented.

The order in which proof shall be received on a trial rests in the discretion of
the trial court.

APPEAL by the defendant, the Edison Electric Light Company,
from a judgment of the Supreme Court in favor of the plaintiff,
entered in the office of the clerk of the county of New York on the
30th day of April, 1897, upon the verdict of a jury, and also from
an order entered in said clerk's office on the 5th day of May, 1897,
denying the defendant's motion for a new trial made upon the
minutes.

*Edward C. James*, for the appellant.

*John C. Tomlinson*, for the respondent.

PATTERSON, J.:

This is an appeal from a judgment in favor of the plaintiff,
entered upon the verdict of a jury and from an order denying the
defendant's motion for a new trial. The case was twice tried. On
the first trial the complaint was dismissed, but on appeal to this court
the judgment was reversed and a new trial ordered. (10 App. Div.
75.) The action was brought on a contract of employment. The
issues joined by the pleadings are few and plain. The plaintiff
alleges that he was employed by the defendant to promote
and organize for the benefit of the defendant, a company to
be known as the Edison Electric Light Company of Philadelphia,
upon an agreement of the defendant to pay him as compensation
for his services in that matter fifteen per cent of the capital stock
of the Philadelphia corporation (which stock was then fixed at the
sum of $1,000,000), and, in addition thereto, five per cent of the
stock upon any future increase of the capital of that Philadelphia
company. He also alleges that he performed the service for which
he was employed and received from the defendant the fifteen per
cent of the stock on the capitalization of $1,000,000, and that sub-
sequently the capital stock of the Philadelphia corporation was

increased by three separate issues of shares; that he became entitled to one-fifth of that increase; that he demanded the same from the defendant, who refused and neglected to deliver any part thereof (and certain dividends declared thereon), and he demands as damages judgment in a certain amount.

The answer of the defendant puts in issue the employment of the plaintiff, the performance of services by him, the increase of the capital stock of the Philadelphia company to the amount of such increase as claimed in the complaint, *but admits that an increase had taken place.* The answer also denies the plaintiff's being entitled, by reason of any of the facts mentioned in the complaint, to recover anything from the defendant, and it denies that the defendant has neglected or refused to comply with any demand, and denies that any demand had been made for any shares of stock, or the value thereof, and then as a separate defense sets up that the plaintiff, for a good and valuable consideration, executed and delivered to the defendant a release, under seal, of all and every claim held by him against it, of every kind and nature whatsoever, and of all and every sum or sums of money due or to grow due thereon. These are the only issues presented by the pleadings.

The plaintiff's claim was based upon a written memorandum signed by one Johnson, the president of the defendant. Johnson's authority to execute it on behalf of the defendant was clearly proven by himself, and it was also shown that the memorandum was made after authority received from the executive committee of the board of directors of the defendant. On the former appeal we held that that written memorandum thus signed by Johnson, the president, on the 23d of February, 1886, a duplicate of which was delivered to the plaintiff at the time it was signed, constituted the contract entered into between the parties to this action; contained all the terms agreed upon, and that the plaintiff's right to recover the five per cent on the increase of capital of the Philadelphia company depended in the first place upon his establishing that he was the person referred to and meant by the words " present promoter " in the second branch of the contract as it was then designated. We also held that, there being ambiguity in those words as relating to the person intended to be pointed out by them, evi-

dence might be given of surrounding circumstances as well preceding as attending the execution and delivery of that paper, and also of the acts of the parties under it, to aid in its construction. Upon the last trial, evidence presenting the respective claims of the parties as to who was the "present promoter" within the meaning of the contract was given, and the jury by their verdict in effect found, upon a very serious conflict of evidence, that the weight of that evidence established the plaintiff's claim that he was the person entitled to the five per cent on increased capital sued for. All of the evidence referred to was upon the direct issue as to the compensation of the plaintiff, the contention on the part of the defendant being that the words "present promoter," referred to a Mr. Jamison, of Philadelphia, and not to the plaintiff; and that although a contract of employment was shown, yet the provision as to five per cent related to remuneration to be paid to another than Mr. Hix.

In deciding the former appeal, we had occasion to call attention to the fact that the contract entered into between the plaintiff and the defendant was divisible into two parts, so far as compensation was concerned. It stated that the Edison Company was to receive "thirty-five per cent (of the Philadelphia company's capital of one million dollars), thirty per cent in stock and five per cent in cash; promoters ten per cent stock, rebate from Edison's Company's thirty-five per cent; Hix five per cent from Edison Company's twenty-five per cent." That provision related to the then fixed capital of the Philadelphia company. The second branch of the contract was as follows: "Future increase of capital; 35% stock to Edison Co., rebate of 5% to *present promoter.*" There is no controversy as to the subject-matter of these two provisions. They relate to compensation to be paid to somebody for services in the organization of the Philadelphia corporation. There is no dispute that Hix was employed by the defendant to organize that company, but it does appear that in the performance of the work in Philadelphia which resulted in the establishment of the Philadelphia company, Mr. Hix enlisted the services of a Mr. Jamison, through whose agency and participation and by reason of whose financial relations in that city the company was established. The issue was, therefore, raised as to whether the

five per cent was to go to Jamison or to Hix, as "present promoter." Upon that issue testimony was given on both sides as to the conversations preceding the making of the memorandum, and one significant fact is admitted, namely, that although the defendant's officers were informed that Jamison was interested in the organization of the company and was to receive some compensation for service rendered in that connection, he was not to be known in the matter as having any interest in any compensation that was to be paid to anybody for services performed for the defendant in the formation of that Philadelphia company. It was clearly shown that no privity of contract whatever was to exist between Jamison and the defendant. But apart from that consideration, Hix testified at the last trial that, in the conversations he had with Johnson leading up to the making of the memorandum, he stated that he wanted fifteen per cent on the first capitalization and five per cent upon the increase; that Johnson remarked, "This is a large percentage," and Hix then said that he, Hix, would have to give away at least ten per cent of the first fifteen to parties who would assist in placing the stock, and that then, as he had to pay all his own expenses and the expenses of forming the company, the five per cent left on the first capitalization would be very little for him, and that is why he wanted five per cent on the increase. He testified that then Johnson sat down and wrote the memorandum, the evidence of the contract. This witness also testified on cross-examination as to what his relations with Jamison concerning the matter were, namely, that Jamison was to receive ten per cent of the first allowance of fifteen per cent, and that for that ten per cent Jamison was to place the stock in Philadelphia or help Hix to do it. Jamison was the principal party, according to this witness, who was to render that service, but he was to receive his compensation through and from Hix and not from the defendant. Mr. Johnson contradicts Hix with reference to this conversation, and Mr. Hastings gives testimony also contradictory of the plaintiff. Mr. Johnson swears that Hix stated to him before the memorandum was made that he had found a man to form the Philadelphia company; that that man wanted ten per cent, and that he, Hix, wanted five per cent of the total capitalization of the local company. Mr. Johnson testifies that Hix said distinctly that Jamison was the promoter, and

that he certainly did not state that he, Hix, was himself the "present promoter." There was, therefore, a clear conflict between these parties upon this subject. But, further, the acts of the officers of the defendant are invoked by the plaintiff to indicate the practical construction they gave to the agreement. The fifteen per cent on the first capitalization was given to Hix; he received and distributed it; he paid the ten per cent of stock or caused it to be paid to Jamison. Again, Hastings, the secretary and treasurer of the defendant, corresponding with a partner of Jamison with relation to the ten per cent of the first compensation of fifteen per cent, under date of June 18, 1888, says: "Consulting with our attorney, this seemed to be the only practical way of arranging the matter, *as the board knows only Mr. Hix as the agent.* This agreement, while it recites the entire arrangement in the first and second recitals, binds ourselves to deliver $100,000 to Mr. Hix; Mr. Hix will then execute a formal assignment of this agreement in such manner as your attorneys may prescribe." That letter was written evidently with reference to some demand of Jamison or his firm concerning the $100,000, and indicates that the corporation knew only Hix as the person entitled to receive that money, and that it must go through his hands, or by his appointment, to Jamison. But in addition to that there was evidence given by Jamison, who was examined as a witness at the last trial, and his testimony is clear to the effect that he had no interest whatever in the matter even by agreement with Hix beyond the amount to be received from the fifteen per cent in the first branch of the contract. He swears that he had no contract, written or oral, of any kind with the defendant entitling him to claim or receive from the defendant any stock or any commission for services in promoting the organization of the Philadelphia company. He did demand and did receive the ten per cent of the fifteen per cent and there his interest in the matter ended.

There was evidence, consisting of letters and statements of Hix, which undoubtedly, standing alone, would tend to show that the words "present promoter" meant either somebody other than himself, or somebody in association with himself. But upon all the conflicting evidence it was for the jury to find what were the facts in connection with which the words "present promoter" were used,

and on that conflicting evidence, having found those facts to be such as the plaintiff claimed them to be, the interpretation of those words would necessarily follow that it was the plaintiff who was entitled to the five per cent on the increased capital of the Philadelphia company.

The justice presiding at the last trial gave proper instructions to the jury respecting this issue, and to the matter of credibility of Jamison by reason of his having some possible interest in the result of the action, and in none of the rulings upon this subject do we find that there was any error requiring a reversal of the judgment; and we do not find that the verdict was against evidence or the weight of evidence, or that we should interfere with it on that ground.

There was another issue before the jury, however — that concerning the relations of the defendant to the Philadelphia company and the increase of the capital of that corporation. It was claimed by the defendant that it was not shown that it had received the thirty-five per cent of such increase. On the former appeal we held that the plaintiff would not be entitled to recover anything on the first increase of capital for reasons not now necessary to repeat. We also held that, upon the facts as they then appeared, it was not necessary for the plaintiff to show that the thirty-five per cent of the second and third increases was actually received or came into the possession of the defendant. That was so held, because the record contained proof that the defendant had disabled itself from receiving its share of such increases, or had bargained away its right to receive that share. That matter is again before the court on this appeal in a somewhat different form. On the former appeal the point was raised that the plaintiff was not relieved from the necessity of showing that the defendant had received the percentages of increased capital. It appeared on the first trial, as on the last, that all that was done respecting those increases was between the Philadelphia company and the General Electric Company, an independent corporation, which the plaintiff claimed was the successor of the defendant, and took over its contracts, carried on its business, was authorized to bind it, and acted for it in every respect, in the particular matters out of which the plaintiff's claim for the additional five per cent arises. On the former appeal we treated the General

Electric Company as the defendant's successor, because on the first trial it had been assumed by both parties that such was the case. No point had been made that it was not so, until the appeal was heard by us, and we remarked that what was deemed sufficient proof was furnished, and, if the plaintiff inopportunely stopped, it was, undoubtedly, because the facts as to the relations of the predecessor and successor company were assumed by both sides.   The defend-ant insisted, on the last trial, that the relations between the two com-panies were not established, and also that the burden of proof was on the plaintiff to show these relations.   It neither denied nor admitted them, but stood upon its undoubted right to demand that the plaintiff prove all his case in every element necessary to fasten liability upon it.   At no stage of the trial did the defendant offer any evidence upon this subject.   The claim made by the plaintiff in this connection, is that the General Electric Company, succeeding to the business of the defendant, stood in its place in contract rela-tions with the Philadelphia company, and thus, having abundant power to do so, modified the contract between the defendant and the Philadelphia company by reducing the percentage on increases of capital from thirty-five to ten per cent, in consideration of which the Philadelphia company surrendered to the General Electric Com-pany all the right it had to carry on the isolated lighting business in the city of Philadelphia, a feature of its corporate industry, the right to prosecute which it had originally derived from still another corporation, while the business of central station lighting it acquired from the defendant.   The legal effect of this claim of the plaintiff, if it be established, is that the General Electric Company became the agent of the defendant in all the transactions connected with the increases of the capital of the Philadelphia company; that by its acts the defendant is bound, and that the acts were of such character as to render the defendant liable for the value of the five per cent of increases sued for.

In the effort to make the proof required to connect the General Electric Company with the defendant, documentary evidence was offered containing declarations and narrating acts of the General Electric Company, tending to show its authority and power to bind the defendant.   That documentary evidence consisted of a letter written by the officers of the General Electric Company to the com-

mittee of the Stock Exchange of New York, the purpose of which was to have the stock of the General Electric Company listed among the securities dealt in on the stock exchange. After making exhibition of its affairs and business, it was stated in that letter that the General Electric Company practically owned all the stock of the defendant. There was another piece of evidence, consisting of a circular issued by the Philadelphia company to its stockholders, in which it was stated that the General Electric Company was the then present owner of the defendant, the Edison Electric Light Company of New York, and that circular was issued in connection with the proposition to increase the capital of the Philadelphia company beyond $1,000,000, the very increase out of which the plaintiff's demand arises. There was also further documentary evidence of a waiver by the General Electric Company of some part of the royalty secured to the defendant by the original contract of the Philadelphia company, and also agreements between the General Electric Company and the Philadelphia company with reference to the affairs between the latter company and the defendant. All this documentary evidence was objected to by the defendant on the ground that it was *res inter alios acta.* After its admission in evidence, motions were made to withdraw from consideration those parts of the documents which referred to the relations of the General Electric Company with the defendant, or to limit the consideration of the jury to such parts of that evidence as did not affect the subject of such relation. It is quite true that neither of these documents, considered independently, was admissible in evidence as proof against the defendant at the particular time in the course of the trial at which each was offered; but it is also true that if there were other competent proof from which the inference of agency could be drawn as matter of law or of fact, that being established, all these documents were admissible to show acts of the agent binding upon the principal. So that, if independent proof is in the record at all, the matter of the admission of the documents objected to, only presents a question of the order of proof, which was within the control of the court. It is not to be controverted that agency may be established either by direct or indirect proof. There is no direct proof in this case to show any devolution of authority immediately conferred by the

defendant upon the General Electric Company to act for it in the transactions embraced in the contract with the Philadelphia company, but it was not necessary that such direct proof should be given. The mere statements of the officers of the General Electric Company that that company owned all the stock of the defendant and that it had succeeded to its business or that it controlled it, would not be sufficient to establish agency. But if we find in the record evidence of acts done apparently with the acquiescence of the defendant, affecting its interests, dealing with its property and securities, under the very contracts in question, acts of such a character as to imply in their nature knowledge and acquiescence of the defendant, we find enough to at least throw upon the defendant the obligation of showing that such acts and the possession of the property of the defendant and its control and management was not with its consent or knowledge. Such evidence is found there. A communication was made by the Philadelphia company to the defendant with reference to the increase of stock of the Philadelphia company. Before the first dividend was declared, Mr. Marks, the president of the Philadelphia company wrote to the defendant that the board of directors of the Philadelphia company had resolved to issue a stock dividend of twenty per cent on its capital to the then present holders of the stock in that company, payable October 1, 1892, *provided the General Electric Company of New York will allow the issue of* $200,000 *free of the ten per cent royalty provided by the contract of July fifteenth.* That contract of July fifteenth recites that the General Electric Company acting for the Edison Electric Light Company of New York (the defendant) and for all other companies of which it now has the control, agrees, etc., etc. Here, then, is a communication directly between the Philadelphia company and the defendant referring to an increase of capital stock, stating to the defendant that that increase is dependent upon the allowance of a certain thing by the General Electric Company. That letter was answered by the General Electric Company as follows: "Referring to your letter of September 26th, addressed to the Edison Electric Light Company, would say that we will consent to waiving our royalty of ten per cent to your increase of stock $200,000 created for the purpose of paying

a stock dividend." It is not an answer to this to say that no presumption is created of the acquiescence on the part of the defendant in the General Electric Company's representing it and acting for it in the matters of the increase of stock of the Philadelphia company. The defendant, in its answer to the complaint herein, admits the increase of the capital of the Philadelphia company. In the communication made to the defendant by the Philadelphia company is a direct reference to the contract of July fifteenth. The Philadelphia company's communication is not replied to by the defendant, but is answered by the General Electric Company, and that thing is done by the General Electric Company which the defendant is notified is to be the basis of the whole increase contemplated at that time of the capital of the Philadelphia company. Here is as complete an acquiescence by inaction of the defendant and action by the General Electric Company as could be shown, and amounts to much more than a moral conviction that the General Electric Company stood in the place of the defendant. It is as strong proof as could be furnished indirectly of the relations of the General Electric Company with the defendant. But, in addition to that, we find the General Electric Company actually in possession of an obligation of the Philadelphia company to the Edison Electric Light Company of New York for the sum of $30,000, which it surrendered to the Philadelphia company at the time the second increase of capital stock was made by that company, thus showing the relation of the General Electric Company to that second increase in acting for or in the interest of or as the successor to the defendant, in surrendering that which it had received in part performance of the contract between the Philadelphia company and it.

Under that state of the proof respecting the successorship of the General Electric Company and its right and power to act for the defendant, all of the acts of the General Electric Company in the business directly connected with the increases of the capital stock became admissible to show what was done and wherein liability would accrue to the defendant by reason of those acts of the General Electric Company; and the instructions that were given to the jury by the learned justice at the last trial upon that subject were correct, viz., that under the state of the evidence and in contempla-

tion of law as to the particular subject of the action, the General Electric Company became the successor in interest of the defendant and had the right to bind it, and that if the jury believed that the defendant knew that the General Electric Company was acting or claiming to act as its successor in interest in the matters involved in this action, and stood by and acquiesced in its so acting, that it would be estopped from now claiming that the General Electric Company had no authority so to act.

But the further defense was made that the plaintiff had released all his claim against the defendant. The release pleaded was not proven. We held on the former appeal that a release could not be inferred from the acts of the plaintiff with reference to the change in the contract between the defendant and the Philadelphia company by which the royalties on increases of capital were reduced from thirty-five per cent to ten per cent. We do not consider that subject open for further discussion. It is claimed, however, by the defendant that, although those transactions have been adjudged not to amount to a release, yet the conduct of the plaintiff establishes an election on his part; that he accepted a benefit accruing out of the modification or partial rescission of the contract, and that to allow him now to claim upon the original basis of thirty-five per cent would permit him to maintain inconsistent positions. The abstraction urged by the learned counsel for the appellant may be incontestible, but the fact appears in this case that the change in the contract between the Philadelphia company and the defendant, and the General Electric Company, was for a consideration passing to the defendant or the General Electric Company, namely, the relinquishment by the Philadelphia company of the important business of isolated lighting which may well have been regarded as an equivalent to the defendant or the General Electric Company for the surrender of twenty-five of the thirty-five per cent of royalties on increased capital. We have no way, in this case, of adjusting the advantages or disadvantages to either corporation involved in that surrender by the Philadelphia company, and before the plaintiff could be held to be bound by an election we would require more elements of proof than are furnished upon this record.

We find no other exception in the record that requires specific consideration.

The evidence, we think, justified the verdict of the jury. It is not shown that the plaintiff agreed to be deprived of his reward by the defendant, his principal bargaining away its right to receive the fund; for all that appears, that principal may have received a full equivalent, and we have nothing to add on this subject to what was stated in our former opinion.

The judgment appealed from should be affirmed, with costs.

Van Brunt, P. J., O'Brien and McLaughlin, JJ., concurred.

Ingraham, J. (dissenting):

The defendant, a corporation organized under and in pursuance of the laws of the State of New York, is sought to be held liable under an agreement made between Mr. Johnson, president of the defendant corporation, and the plaintiff, for services rendered in the promotion or organization of a corporation known as "The Edison Electric Light Company of Philadelphia." A memorandum of the agreement between the plaintiff and Johnson was given to the plaintiff at the time the agreement was made, signed by Johnson as president. By that memorandum, supplemented by the evidence of the plaintiff, it appears that the plaintiff as promoter was to organize a company in Philadelphia, with a capital stock of $1,000,000, of which the defendant was to have thirty per cent in stock and five per cent in cash. The promoters were to have ten per cent, and the plaintiff was to have five per cent of the stock from the thirty per cent which the defendant was to receive. The memorandum also contained the following provision:

"Future increase of capital 35% stock to Edison Co. Rebate of 5% to present promoter."

The plaintiff claimed that, under this contract or memorandum, the defendant agreed to pay him fifteen per cent of the capital stock upon the incorporation of the Philadelphia company, and five per cent of any increase of stock of the Philadelphia company out of the thirty-five per cent of such increase, which, under the agreement, was to be paid to the defendant. The plaintiff proceeded to organize the Philadelphia company, which was eventually incorporated with a capital of $1,000,000, thirty-five per cent of which was transferred to the defendant in stock, and fifteen per cent of which was transferred by the defendant to the plaintiff.

Subsequently the stock of the Philadelphia company was increased by the issue by the Philadelphia company of stock to the par value of $200,000, which was divided among its stockholders as a dividend. And in September, 1892, the Philadelphia company authorized the issue of $273,000 additional capital stock of said company. That stock was sold at par, realizing for the Philadelphia company the sum of $273,000, the proceeds being used to pay obligations of the Philadelphia company. On March 15, 1893, there was a further issue of stock by the Philadelphia company of the par value of $277,000. No part of either of these issues of stock seems to have been received by the defendant. It was held by this court, on a prior appeal, that the plaintiff was not entitled to recover for the stock issued by the Philadelphia company as a dividend, but was entitled to five per cent of the stock that the defendant should have received upon the increase of the capital stock sold by the Philadelphia company; and upon a retrial of the action the plaintiff has recovered a judgment against the defendant for the value of five per cent of the $550,000 of the capital stock of the Philadelphia company, which that company sold for cash, and no part of which stock was issued to the defendant. Upon the trial the court charged the jury: "Always providing you shall find that the plaintiff was the ' present promoter' within the meaning of the contract, he is entitled to the value of his percentage of the stock at times when the defendant might have received it but for the contract of July 15th, 1892." To this the defendant excepted.

It seems to me that this contract between the defendant and the plaintiff imposed no liability upon the corporation organized by the plaintiff to deliver any stock to the defendant.

It is well settled in this State that contracts made by a promoter of a company are not binding upon the company when organized and incorporated. (*Munson* v. *S. G. & C. R. R. Co.*, 103 N. Y. 75.)

When we come to look at the general effect of such a contract as is here proposed to be enforced, it seems to me that such a contract could be challenged, even if subsequently ratified by a corporation. The stock of a corporation can be issued only for money or its equivalent. At common law a corporation would not have a right to issue its capital stock as full paid-up stock to a third party with-

out consideration unless expressly authorized by its charter ; and it is at least a doubtful question whether a contract by a corporation, made upon a good consideration, to issue a percentage of all subsequent increases of stock that it should make, to a particular individual, without requiring any payment therefor, would be binding. Thus, if it should wish to increase its stock and sell it for the purpose of obtaining additional working capital, or property necessary for the transaction of the corporate business, before it could do so it would have to issue without consideration a certain percentage of the increase to an individual as full paid-up stock. Thus, upon every increase of capital stock the company would receive, not the value of stock as issued, but the amount of such stock, less the percentage issued as full-paid stock to such third party. Such a contract, it seems to me, would be one that no court would enforce at the suit of the individual who claimed to be entitled to receive such a percentage of the stock from the corporation which had bound itself to issue it. The only contract that appears to have been made between the plaintiff and the Philadelphia company was the agreement executed on the 3d day of February, 1887, whereby the defendant granted to the Philadelphia company a license for the sale and exclusive use of certain inventions under letters patent held by the defendant within the corporate limits of the city of Philadelphia. As a consideration for that license, it was agreed that of the capital stock of the Philadelphia company, of the par value of $1,000,000, the defendant should receive from the Philadelphia company thirty per cent, fully paid and non-assessable, and five per cent of all moneys called in by the said Philadelphia company when the same should be paid by the stockholders. It further provided : " This percentage of thirty-five per cent is to be maintained in any future increase of the capital stock, subject only to the change that the percentage in such case is to be given entirely in stock." It was further provided in the agreement that all shares of the Philadelphia company should be of the par value of $100 each and of like tenor and effect, and should be issued for full payment in cash only, except as above provided ; and that thirty per cent of all such shares, as originally fixed, or at any time afterwards increased, should be delivered, fully paid, to the light company or its assigns. The agreement also contained a further provision that no bond or

mortgage, or other incumbrance creating a preferential charge in priority to its ordinary capital stock, other than such sums as may be temporarily required to meet current liabilities of the company necessarily incurred for machinery, plant or other material or property required in carrying on its business, shall be created by the illuminating company without the consent of the light company; that the defendant, however, agrees to give its consent to creating such a preferential charge whenever requested, in writing, provided that thirty-five per cent in amount of the preferential charge thus created shall be given to the defendant, fully paid. Assuming, however, that this agreement between the defendant and the Philadelphia company was valid, and that under it the defendant could insist upon the Philadelphia company's paying to the defendant thirty-five per cent of the capital stock subsequently issued, I do not think that the subsequent agreement made between the defendant and the General Electric Company contracted away any right that the defendant in this action had to receive from the Philadelphia company any stock of its proposed issue; and neither that contract nor the receipt by the General Electric Company of any of the Philadelphia company's stock or money would justify the plaintiff in demanding from the defendant any stock, or the value of any stock, as delivered to it under this contract between himself and the defendant. The General Electric Company did transfer to the Philadelphia company, by the agreement made on the 15th day of July, 1892, and the supplemental agreement made on the same day, various licenses and rights, in consideration of which transfer and contract the Philadelphia company agreed to pay to the General Electric Company ten per cent of the new stock that it should issue, and also ten per cent of such bonds as it should execute and negotiate; and such stock and bonds to be issued by the Philadelphia company to the General Electric Company were expressly stated in the agreement to be in consideration of the license and other provisions of this contract. This contract did not, itself, purport to destroy any right that the defendant would have to receive from the Philadelphia company any stock, nor did it abrogate any obligation of the Philadelphia company to the defendant. It simply provided that this contract should take the place of the license theretofore granted by the Edison Electric Light Company

of New York to the Edison Electric Light Company of Philadelphia. The right of the General Electric Company to receive this ten per cent of stock or bonds was not based upon any agreement or license theretofore existing between the defendant and the Philadelphia company, but the stock was to be issued to the General Electric Company for the rights and licenses granted to the Philadelphia company by the contract of July 15, 1892, and as the defendant never did receive any stock of the Philadelphia company, I do not think it was liable to the plaintiff for any such stock.

It is conceded in the prevailing opinion that the matter is now before the court on this appeal in a different form from what it was presented upon the former appeal. It was not held that the act of the General Electric Company in granting a new license to the Philadelphia company and insisting therein that it should be paid a portion of such new stock, as a matter of fact, rendered the defendant liable for something which it never received and from which it could derive no benefit. It seems to me also that there was absolutely no evidence to show that this defendant ever constituted the General Electric Company its agent to contract away its right, if it had any, and it seems to be conceded that the only proof of such agency is the acts and declaration of the General Electric Company and the Philadelphia company. It seems to me a novel proposition to hold that the acts or declarations of one alleged to be an agent are competent as evidence standing alone to prove the fact of agency and the authority conferred upon the agent. The General Electric Company and the defendant are distinct corporations. The General Electric Company admits and declares that it controls the defendant and is the owner of its stock, but I see no evidence in the case in which the defendant has admitted or made such a declaration, and upon what principle it can be said that this defendant is to be liable for a contract made between the General Electric Company and the Philadelphia company, not purporting to be made by the defendant's authority, and not purporting to be a contract made by the defendant, and where it is not alleged that the principal had any knowledge that a particular contract was being made in its name or on its account, I am at a loss to conceive. I do not think that there is any evidence here to show that the General Electric Company assumed to release any right that the defendant had against

the Philadelphia company, and as the defendant has received no stock from the Philadelphia company, the plaintiff is not entitled to any percentage of the increase of the stock named.

It seems to me, therefore, that upon the facts as proved the plaintiff was not entitled to recover.

I dissent from the affirmance of the judgment.

Judgment affirmed, with costs.