(10 App. Div. 75.)

### HIX v. EDISON ELECTRIC LIGHT CO.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. CONSTRUCTION OF CONTRACT—QUESTION FOR JURY.
    It is for the jury to determine who was meant by the term "present promoter," in a contract to organize a corporation, where there is conflicting testimony.

2. CORPORATION—STOCKHOLDERS—RELEASE OF INDIVIDUAL RIGHTS.
    The consent of a stockholder that his company should agree to a modification of a contract in which he was individually interested is not a release of his individual rights against the other contracting party.

3. PRINCIPAL AND AGENT—COMMISSION—FRAUD OF PRINCIPAL.
    A principal who agrees that his agent shall receive a percentage of money to be paid on a contract secured through such agent cannot dispose of his own right to receive the fund, and thus deprive the agent of the reward for his services.

Appeal from trial term, New York county.

Action by W. Preston Hix against the Edison Electric Light Company for commissions in organizing a company. From a judgment entered on a verdict in favor of defendant, directed by the court, and from an order denying a motion for new trial, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

John C. Tomlinson, for appellant.

Eugene H. Lewis, for respondent.

PATTERSON, J. From the somewhat confused record of the colloquy between the court and counsel just preceding the conclusion of the trial of this cause, it is difficult to ascertain the precise ground upon which the case was taken from the jury, and a verdict directed for the defendant. The learned judge, however, stated that, if he took the view of the plaintiff's counsel, there would be a question for the jury,—whether, after all, the plaintiff was a promoter of the Philadelphia Company,—but that, under the view which he (the judge) took (which view is not stated), that question

was immaterial to the determination of the cause. An examination of the whole record discloses that the underlying question involved in the case is whether the plaintiff was entitled to 5 per cent. of the increased capital of the Philadelphia Company, as the person referred to as "present promoter" in the memorandum made by Johnson, and which contains the written evidence of the contract between the defendant company and Hix; for, as we understand the issues and the evidence, the case comes down to a consideration of that question. The action was brought by Mr. Hix to recover upon a contract of employment. He specifically declares upon such a contract in his complaint, stating the nature of that employment as being to promote and organize a corporation for electric lighting in Philadelphia, for which his compensation, it is alleged, was to be 15 per cent. of the stock of a company capitalized at $1,000,000, and, in addition thereto, 5 per cent. of the stock upon any future increase of that capital. That the 15 per cent. was given him, or passed through his hands, is admitted; and his claim now is for 5 per cent. upon an aggregate of $746,000 of increased capital of that Philadelphia corporation.

It appeared in evidence that the plaintiff had rendered services to the defendant, from time to time, in the organization of electric light companies in various cities of the United States, which companies were to conduct business as licensees of the defendant, and that, after a protracted negotiation conducted by him respecting the formation of a company in Philadelphia of the character referred to, Mr. Johnson, the president of the defendant, signed and delivered to him a writing or memorandum, which he introduced in evidence as the basis of his claim. There can be no doubt, we think, that that memorandum constitutes the contract between the parties. It was so treated by the plaintiff, who, insisting that it was such, made strenuous efforts to have it admitted in evidence, and succeeded in so doing only upon producing proof to show that Mr. Johnson, who signed it on behalf of the defendant, was authorized to execute and deliver it, as the representative of the defendant. The principal effort in the case made by the plaintiff was to get that memorandum before the jury. If it were not the contract, it was certainly nothing constituting documentary evidence binding the defendant, but was, at best, a mere memorandum made by a witness. But it was made by Johnson, the president of the defendant. It was a reduction to writing of what was substantially agreed upon between Hix and Johnson respecting the matter covered by it. It was signed by the party to be charged, was delivered to the person who seeks to enforce it, and was accepted by him as the final evidence of what he had agreed to with the president of the defendant. That memorandum referring to the transaction of the organization of the Philadelphia company is divisible into two branches; the first, so far as the plaintiff is concerned, relating to the compensation to be paid him for his services. It recites, in substance, that, of the $1,000,000 of which the capital of the Philadelphia company was to consist, the Edison company, the defendant, was to receive 35 per cent.,—30 per cent. in stock, and 5 per cent. in cash; the "promoters" to receive 10

per cent. in stock, a rebate from the Edison Company's 35 per cent.; Hix to receive 5 per cent. from the Edison Company's 25 per cent. The second branch of the contract refers to future increases of capital, and the memorandum states, in substance, that 35 per cent. of the stock of such future increases is to go to the defendant, and a rebate of 5 per cent. therefrom to "present promoter." The only ground upon which the plaintiff can claim the 5 per cent. must be that it was he who was referred to as the "present promoter" in this second branch of the memorandum. Not necessarily that he was the "present promoter," apart from and in addition to his agency proper, but that he was the present promoter, as that function— whether performed directly or through others—was embraced within his agency. It was considered by the court on the trial that this memorandum was not sufficiently clear in itself to indicate who was meant by the words "present promoter," and therefore, with the consent or acquiescence of both parties, evidence was taken of the surrounding circumstances under which the contract was executed, and of what was done under it, in order that construction might be given to it in the light of such circumstances. It would seem from the phraseology of this memorandum that in its first branch a distinction in terms is made between those who came under the designation of "promoters" and Mr. Hix; for the compensation to be given under that first branch is specifically divided between two separate parties, namely, promoters, as contradistinguished from Mr. Hix, and the latter; and Mr. Hix testified that Jameson and his friends were "promoters." The promoters are to receive 10 per cent. as distinct parties so designated, and Mr. Hix to receive 5 per cent. So that if the ordinary construction is to be given to the second branch of the contract, with reference to "present promoters," it would seemingly recognize the same distinction as that made in the first branch or subdivision of the contract, relating to compensation. Even as used in the first branch of the memorandum, however, it does not follow that the promoters were persons with whom the company was independently contracting. It is, in fact, clear that they were not. The plaintiff's claim is that the contract was with him, and with him alone, and that the agreement was to pay him, and him alone; the contract, by this form of expression, merely characterized the use to which a part of the payment was required to be put by the plaintiff.

The learned judge having allowed (and, as we think, properly) this explanatory evidence, it becomes necessary to scrutinize the record to ascertain whether there was anything to be left to the jury concerning that question of fact. The rule is not disputed that where evidence of the character referred to is admitted to aid in the explanation and interpretation of the terms of a contract, so that they may be given effect, if there is no real conflict in the evidence the matter of the construction of that contract still remains one of law, for the court; and the rule is also conceded that where, on the parol evidence, there is an overwhelming preponderance, a verdict contrary thereto should be set aside by the court. But the jury must pass on the evidence where there is a conflict. The effort on the part of the plaintiff here was to show that he

really was the promoter, within the meaning of this branch of the contract, or, if not the only one, that he was associated with other people in the enterprise, as one of the promoters, and hence was entitled to recover, as the party to whom the 5 per cent. was to be paid. The testimony to establish that relation comes from himself, in connection with certain written evidence. The testimony of Mr. Johnson, whose connection with the company ceased long before this trial, is that Mr. Hix told him, or gave him very definite information to the effect, that the promoter was a Mr. Jameson, of Philadelphia; and that Mr. Jameson was, to some extent, connected with the subject, in that relation, appears both by the testimony of this witness and of Mr. Hix himself. But an analysis of the proof leads to the conclusion that upon the whole evidence, in the light of all the circumstances under which the contract was executed, the nature of the conversations and negotiations had between the plaintiff and Mr. Johnson prior to the signing and delivery of the memorandum, and the practical construction which the parties gave to that memorandum by their acts under it, it was for the jury to say whether the promoter entitled to the 5 per cent. on increased capital was not the plaintiff, as distinguished from any other person connected with the organization of the Philadelphia company. It is observable that in the first branch of the memorandum the plural, "promoters," is used. In the second branch the singular, "promoter," is employed; the inference being, in connection with the proof offered, that the 5 per cent. referred to was to be paid to some one person. It appears beyond controversy that Johnson, the president of the defendant, was treating with the plaintiff from the beginning to the end of the transaction, and with the plaintiff alone. There is nothing to show that at any time Johnson came into relations with any one else, except that at one time he was introduced to Jameson; but it is clear that he did not make any arrangements with Jameson, nor have any negotiations with him. The 15 per cent. provided for in the first branch of the agreement was paid to the plaintiff, and he swears that he received it for those who were promoters. He also distinctly testifies on his cross-examination that he was not one of the promoters referred to in the first branch of the agreement, but, notwithstanding that statement, he also indicates in his testimony that he was interested in the 15 per cent., and that the responsibility was imposed upon him to get that 15 per cent., and to pay part of it to those who were "promoters" in Philadelphia. That he was the person considered to be entitled to receive, in the first instance, this 15 per cent., he claims is shown by the acts of the defendant with reference to that matter. It was given to the plaintiff. It was all paid to the plaintiff. He did pay 10 per cent. to those who practically established the Philadelphia corporation. He first received that 10 per cent., and delayed taking his own 5 per cent., but he was treated as the proper party to demand and receive all the 15 per cent. On May 31, 1888, the defendant, in response to "an application of the agent, Mr. Hix, for payment of his agent's and promoter's commission for the formation of that

[the Philadelphia] company," passed a resolution to execute a written agreement, as evidence of the plaintiff's rights. This resolution recited that the defendant was to get $300,000 of the Philadelphia company's stock; the agent and promoters, one-half of this. It proceeded:

"Although only sixty per cent. of the capital of the company has been called in, they have issued our full percentage of stock, or $300,000, of which the agent now asks for the $150,000, to which he is not really entitled until after the entire present authorized capital of $1,000,000 has been paid in."

The expression "agent's and promoter's commission" is significant. It means the commission to which the plaintiff was entitled for his services as agent, and for his disbursements to promoters. The agreement which the defendant resolved to execute is also highly significant. It recites that the Philadelphia company was under obligation to pay the defendant 30 per cent. of its capital stock, and that Mr. Hix is to receive from the light company (the defendant) one-half thereof; that the capital stock of the said Philadelphia company has been fixed at $1,000,000, of which only 60 per cent. ($600,000) has been called in, upon which amount there would be due to the light company 30 per cent. ($180,000), of which one-half would be due to Hix. The intention is to deliver to Mr. Hix a certain part thereof, to wit, 1,000 shares thereof, amounting to $100,000 face value, as soon as the entire capital of the Philadelphia company ($1,000,000, as aforesaid) shall have been fully paid. Further, there is the statement that, as soon as the whole of the Philadelphia company's stock shall have been paid, there will be transferred and delivered to Mr. Hix, or his assigns, certificates of stock in the said Philadelphia company amounting to $100,000, face value, as payment on account of his claim for one-half of the light company's percentage. This arrangement was afterwards carried out, and payment made in the manner specified. There is another piece of evidence, of some force, in a former contract of the plaintiff, on January 1, 1885, and appearing in evidence, in which it is stated that (referring to the compensation in stock to be given to the plaintiff for service):

"It is understood, however, that this liberal compensation is provided for you with the understanding that you are expected to use such part of it as may be necessary to compensate your correspondents or promoters for the assistance which they will give you."

Now, all this evidence was not admissible, and was not competent, to establish any other contract than that which is contained in the memorandum Exhibit B. But it was admissible to show the situation and relation of the parties to each other, and what was meant by them in that contract with reference to promoters. If it is true, then the contention made by the plaintiff, that through all this transaction these several facts existed, and were controlling, was established, viz.: That he was employed to organize a Philadelphia company, but that he could not succeed without the assistance and co-operation of persons in Philadelphia, who were generally termed "promoters," who would have to be compensated for their services, and that, in the adjustment of the amount which

the plaintiff was to receive, there was to be included a sum necessary to be paid to such persons, under the general name of "promoters"; that, while they are the persons referred to in the contract as the ultimate recipients of a portion of the $150,000, nevertheless the transaction was one directly with the plaintiff, and with the plaintiff alone; and that in the second branch of the contract, where the word "promoter" is used, there is a recognition of his individual right and status, as the only other party to the contract with the defendant to whom the 5 per cent. on increase of capital was to be given for his services; and that through the whole contract, as made, there ran the one pervading element, that the plaintiff was the only person with whom the defendant was contracting to pay compensation for services in organizing the Philadelphia company; and that, as a consequence, all other persons operating with him were in privity with, and could claim under or through or against. him alone.    The testimony of Mr. Johnson, fairly considered, and given effect to, raises a distinct issue as to the surrounding circumstances in the light of which the contract was to be construed, and upon that issue we think the learned judge was correct in the first impression he formed and announced respecting the proper course to pursue at the trial, and that it should have been left to the jury to say which version they would take,—that of the plaintiff, with its seeming corroboration, or that of Mr. Johnson, and certain letters of the plaintiff which appear to give support to what Mr. Johnson testified to.    Had that been done, and the jury found a verdict for the plaintiff, we cannot say that it would have been so clearly against evidence that it should have been set aside on that ground.

At the trial certain objections to a recovery were urged, which influenced the trial judge in his dismissal of the complaint.    On July 15, 1892, a contract was made between the General Electric Company, the successor in interest of the defendant, and the Philadelphia company, whereby the former reduced its percentage of future increases in the stock of the latter from 35 per cent. to 10 per cent., in consideration of which the latter relinquished to the former the right to transact a certain branch of the electrical business in the city of Philadelphia.    The plaintiff was a stockholder in the Philadelphia company when the proposition was made by the General Electric Company, and he voted in favor of it.    After the contract was executed, the Philadelphia company made three successive increases in the amount of its capital stock.    The first was of $200,000, and was distributed among the stockholders pro rata, and was so issued to represent the value of earnings put into betterments or increased plant.    Plaintiff received his allotment of stock.    The second increase, of $273,000, and the third, of $277,000, were issued for cash, at par; and plaintiff availed himself of his right to subscribe for a pro rata share of it, then being at about 20 per cent. premium.    It is said that the plaintiff, by consenting to the execution of the contract with the General Electric Company, and benefiting by the subsequent increases in the stock of the Philadelphia company, estopped himself from claiming his 5 per cent. from the defendant.    The

elements of an estoppel are not present. The basis of an estoppel is action of one party leading to the other's injury. The General Electric Company was not injured or misled. It made a proposition to the Philadelphia company that the former surrender its right to 25 per cent. of future increases of the stock of the Philadelphia company in consideration of the latter's relinquishment of certain rights. That only did the General Electric Company bargain for, that it got, and that is all it was entitled to. To work from this situation a release of the plaintiff's rights would be to bestow a gratuity upon the General Electric Company. That company was not injured. Neither was it misled. It knew that the Philadelphia company could act only through its stockholders, of whom plaintiff happened to be one. By favoring the proposition, he was assisting the General Electric Company to obtain what it desired. It would be strange, indeed, if he were to be punished in the very serious manner suggested for so doing. What did his consent amount to, under the circumstances? It meant but one thing, viz. that he was willing his company should enter into the contract proposed, and did not believe that his interests as a stockholder would suffer thereby. If, in fact, the increase in the capitalization of the Philadelphia company was directly consequent upon the making of this contract, and plaintiff benefited thereby, the defendant's successor has absolutely nothing to complain of. It is argued that the plaintiff's consent as an individual and as a stockholder cannot be dissevered. There is no such attempt. It is the plaintiff's consent both as an individual and as a stockholder. But what construction is to be placed upon it? Is it a release, strictly implied, and not express, of a valuable contract right, antecedently and independently acquired, the enforcement of which is in no way inconsistent with his act in voting as a stockholder in favor of the new arrangement made between the two companies? Such serious consequences will not be imputed, as matter of law, from the facts as they stand on this record, and it is impossible to spell out such an agreement on the plaintiff's part as is claimed.

The next reason assigned against a recovery by the plaintiff is that he was to be paid out of the defendant's 35 per cent. of future stock, that neither the defendant nor its successor has received this 35 per cent., and that, consequently, a condition precedent to the maintenance of the action is unfulfilled. Primarily, the argument rests upon the terms of the contract itself. Plaintiff's 5 per cent. is to be a rebate from the Edison Company's 35 per cent. This doubtless signifies that the 5 per cent. was to come out of the 35 per cent., and, in the absence of special circumstances, the plaintiff would be obliged to wait until his principal had received the fund out of which his own compensation was to come. But the principal may not bargain away his right to receive the fund, and thus deprive the agent of the reward for his services. The latter has not agreed to any such thing as this, and the injustice of it is manifest. The principal might receive a full equivalent for the original fruits of the agent's work, and yet not pay him a dollar. That the principal may not do this, without the agent's express consent, we regard as a

proposition too plain for further discussion.     There is no such explicit consent evidenced by the terms of the writing.     It is said, however, that the extrinsic evidence shows that the plaintiff agreed to this very thing.     In proof of this, prior contracts made by the plaintiff are pointed out.     They were none of them in force at this time, but they furnish, undoubtedly, some evidence of the nature of the arrangement which subsisted throughout in the defendant's dealings with the plaintiff.     It will be sufficient to cite, as an example of all, a six-months contract made on January 1, 1885, with the Isolated Company.     It provided:

"Your [plaintiff's] compensation is to be payable at such time as we receive payment of cash or stock due to ourselves, and proportionately as payments on account are made to us, we reserving the right to accept such terms in regard to time and manner of payment as we may elect."

On this head, Johnson testified:

"Whether in selling a dynamo for the Isolated Company, or whether he organized an illumination company, he was to get his compensation from that which the company received, and in proportion and at the times received by the company. If subsequently—Mr. Hix thoroughly understands this—the company elected, for reasons which were sufficient to itself, to modify any contract, the agent invariably conceded to the company that right, and acquiesced in it."

The contract, it will be noticed, merely gives the right to fix the "time and manner" of payment.     It is not a fair inference that the company had the right to refuse arbitrarily payment altogether, or to contract away its right to receive the fund out of which the plaintiff was to be paid.     Nor does Johnson's testimony necessarily bear such an interpretation.     He speaks of the company's right to "modify" the contract, but this might well mean merely the privilege of changing the time of payment.     Thus, even if we felt bound to hold, as matter of law, that the prior arrangement as to payment of the plaintiff continued in force at the time the memorandum agreement was made, and constituted a part of the memorandum agreement, we can see nothing therein which, upon the facts of this case, should deprive the plaintiff of his percentage upon the stock to which the company was entitled, and which, but for the supplementary agreement with the Philadelphia company, it would have received; always providing the jury shall find that the plaintiff was the present promoter, within the meaning of the contract as already discussed.     In this connection it should be pointed out that the defendant's successor remained entitled to 10 per cent. of future increases, after the contract with the Philadelphia company, and that the record shows that in at least one case it collected this from the Philadelphia company. Thus, the plaintiff was clearly entitled to recover something, even if we are in error in holding that he was entitled to the full rebate, as though the entire percentage of stock had been paid to the defendant in specie.     And here we may add that the respondent's contention with regard to the receipt by the defendant of this 10 per cent. seems to us to be without any foundation.     They say that the proof failed to show the defendant's connection with the successor company.     This point, however, was not taken upon the

trial, nor was the case disposed of upon any defect of proof in that respect. On the contrary, what was deemed to be sufficient proof was furnished; and if the plaintiff inopportunely stopped, as the defendant contends, it was undoubtedly because the fact as to the relations of the predecessor and successor company were assumed by both sides. It is a little late, and hardly fair, to raise this technicality now.

There is another question which will arise upon the new trial, and which should now be considered. The learned counsel for the appellant has suggested that the plaintiff might be entitled to 5 per cent. of the value of the business taken in exchange for 25 per cent. of the stock. We do not think that this would be the relief to which he is entitled. To so hold would interpolate into the contract something which is not there. The contract awards the plaintiff 5 per cent. of the defendant's 35 per cent. of stock. As plaintiff's rights are not dependent upon the actual reception by the defendant of its stock, he will be entitled to the value of his percentage of the stock at the time when the defendant might have received it but for the contract of July 15, 1892. In connection with this subject, it may be added that we do not think the plaintiff, in any event, is entitled to 5 per cent. upon the first issue of increased stock. That was so issued as a dividend, in lieu or replacement of an equal amount of money earned by the Philadelphia company, and used in the expansion of the works or plant of the company. It was, in reality, earnings, or a substitute for earnings, belonging to the stockholders, who presumably agreed to take those earnings in that form, and was not new capital subscribed for as such. And that is evidently the only kind of increase of capital contemplated by the parties to this action in making the memorandum agreement.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide the event. All concur.