W. J. REED, RESPONDENT, *v.* UNION CENTRAL LIFE INSURANCE COMPANY OF CINCINNATI (A CORPORATION), APPELLANT.

INSURANCE POLICY — AGENT'S COMMISSION — NOT DEFEATED BY PURCHASE OF POLICY BY COMPANY. ISSUANCE OF POLICY — PREMIUM PAID — COMPANY'S LIABILITY FOR COMMISSION. ESTOPPEL — BY ACT OF PARTY. PRINCIPAL AND AGENT — JOINT INTEREST — ACT OF PRINCIPAL — CAN NOT DEPRIVE AGENT OF HIS REWARD. WAIVER — WHAT CONSTITUTES. ACTION — ON CONTRACT — DEFENSE IN MITIGATION — HOW PLEADED.

*Insurance Policy — Agent's Commission — Not Defeated by Purchase of Policy by Company.*

An Insurance Company, under contract to pay plaintiff as its agent, certain commissions on premiums paid and received by it, on insurance written by him, after the issuance of a policy and accepting a portion of the first annual premium and having in its possession non-due paper for the balance of such premium, may not, for a consideration and by the surrender of such notes, purchase the surrender of such policy so as to defeat plaintiff's right to commission, without proof of fraud

in procuring the issuance of the policy or an express waiver by plaintiff.

*Issuance of Policy — Premium Paid — Company's Liability for Commission.*

Defendant having accepted the application for insurance obtained by plaintiff and having issued a policy thereon and taken notes for the premium, was bound to collect such notes when due and pay plaintiff therefrom, the amount of his commission ; and this obligation could not be avoided by a claim that the risk was undesirable or that the assured had been previously refused by another company.

*Estoppel — By Act of Party.*

The defendant company, having placed beyond its power the right to collect certain premium notes in which plaintiff had an interest, as for his commission, is now estopped from denying liability for commission earned upon the ground that the maker of the notes was insolvent and the notes uncollectible.

*Principal and Agent — Joint Interest — Act of Principal — Can Not Deprive Agent of His Reward.*

A principal who agrees that his agent shall receive a percentage of money or commissions to be paid upon a contract secured through such agent, for the benefit of both, can not dispose of his own right to receive the fund, and thus deprive the agent of the reward for his services.

*Waiver — What Constitutes.*

A waiver is an intentional relinquishment of a known right, and there must be both knowledge of the right and an intention to relinquish it.

*Action — On Contract — Defense in Mitigation — How Pleaded.*

In an action on a contract a defense in mitigation of damages can not be shown under a simple denial, it must be specially plead.

(Decided April 9, 1900.)

Appeal from the Third District Court, Salt Lake County. Hon. A. N. Cherry, *Judge.*

Action by plaintiff to recover certain sums of money claimed to be due him as commission on certain policies of insurance obtained by him for defendant while acting as defendant's agent. From a judgment for plaintiff defendant appealed. *Affirmed.*

*Messrs. Bennett, Harkness, Howat, Sutherland & Van Cott,* for appellant.

The contract between the plaintiff and defendant being that the plaintiff was to receive as compensation for his services, *commissions upon the premiums, which should be paid in cash to and received by the defendant,* and no cash having been paid to or received by the defendant upon the notes in question, the basis of the plaintiff's right to recover is that the defendant wrongfully and in violation of his rights procured the surrender of the notes in question. This implies that the defendant, after having issued a policy, had no right for its own protection to negotiate for the surrender of a policy, even though it was discovered that the risk was a bad one, and that it was to its interest to procure the surrender of the policy.

To so hold is to determine that it is the proper construction of the contract between the plaintiff and the defendant, that whenever a policy had been issued by the defendant and notes given for the premium, that the defendant under the contract had no right to recall the policy, no matter how good a reason existed therefor, or how bad a risk the assured had been discovered to be, and that it was dangerous to the interests of the defendant to carry the risk any longer.

We contend that the proper construction of the contract is that the plaintiff, as the agent of the defendant, should receive as compensation, fifty per cent of the first year's premiums actually paid to and received by the defendant in cash; and that if, before the notes became due or were paid, the company should in good faith and for reasons appearing sufficient to it, believe that the risk was a bad one, and that the interest of the defendant demanded that it should procure the surrender of the policy by returning the notes, that then the defendant had the right, for its own protection, to make the agreement with the assured for the surrender of the policy to the defendant by the surrender of the notes given for the premium. *Madden* v. *Insurance Co.*, 32 N. Y. Supp., 752; *Lea* v. *Insurance Co.*, 43 S. W., 927.

The law is well settled that where the language of a contract is ambiguous the practical interpretation of it by the parties is entitled to great if not controlling influence. *Topliff* v. *Topliff*, 122 U. S., 121; *District of Columbia* v. *Gallacher*, 124 U. S., 505.

The plaintiff was bound to know the legal effect of the contract between him and the defendant. He was conclusively presumed to know the law, and can not relieve the effect of his conduct as constituting his waiver, by showing that he did not know at the time that he was entitled to commission upon the notes in question. 1 Wharton on Contracts, Sec. 198; 3 Parsons on Contracts, 6th Ed., 398; *Wadsworth* v. *Smith*, 43 Iowa, 439.

We admit that before there can be a waiver, either by express words or by conduct, that there must be knowledge of the facts existing, but it is not the law that he must have knowledge of the legal effects of the facts. 2 Biddle on Ins., Sec. 1052; *West* v. *Platt*, 127 Mass., 367, 472; 2 Wood on Ins., p. 1148.

The defendant clearly had a right to show that Beck was insolvent and had no property out of which the notes could have been paid. *Latham* v. *Brown*, 16 Iowa, 118; *Thomas* v. *Waterman*, 7 Met., 227; *Neff* v. *Clute*, 12 Barb. (N. Y.), 466; *Allen* v. *Snydam*, 20 Wend., 321; *Mc Peters* v. *Phillips*, 46 Ala., 496.

*Messrs. Dey & Street*, for respondent.

It is elementary that if an agent's employment be by special agreement, his right to compensation will be determined by the terms of the agreement exclusively.

It is also clear that an agent may by special agreement with his principal so contract as to make his compensation dependent upon a contingency. Under such a contract he will be entitled to compensation on showing that the contingency has happened, or that *performance was prevented through some fault of the other party.* 1 Am. & Eng. Law, 2d Ed., 1096.

These general principles lead to the specific rule of law and natural justice that *a principal who agrees that his agent shall receive a percentage of money to be paid on a contract, secured through such agent, can not dispose of his own right to receive the fund, and thus deprive the agent of the reward for his services. Hix* v. *Edison Electric Light Co.*, 41 N. Y. Supp., 680–686; Bishop on Contracts, Sec. 690; *Wolf* v. *Marsh*, 54 Cal., 228.

That "waiver *is the intentional relinquishment of a known right*" is well settled in courts of the highest standing. *Hoxie* v. *Home Ins. Co.*, 32 Conn., 40 S. C.; 85 Am. Dec., 240–245; *Lewis* v. *Phœnix, etc., Ins. Co.*, 44 Conn., 91; *Shaw* v. *Spencer*, 100 Mass., 382; *Holdsworth* v. *Tucker*, 143 Mass., 374.

In general no man can be bound by a waiver of his rights unless it is made distinctly with full knowledge of

the rights which he intends to waive. *Montague* v. *Massey*, 76 Va., 314.

To the proposition that waiver must be an intentional act with knowledge, we cite further cases. *Darnley* v. *London, etc., R. Co. L. R.*, 2 H. L., 57; *Bennecke* v. *Conn. Mut. L. Ins. Co.*, 105 U. S., 355–359.

The final question in the case relates to the refusal of the trial court to admit evidence offered to prove that John Beck was insolvent, and to infer therefrom that he could not have paid the note in question.

Appellant claims that the evidence was offered in "mitigation of damages." We do not understand that the doctrine of mitigation of damages extends to suits "*ex contractu.*" The authorities seem to confine it exclusively to torts. 1 Sutherland on Damages, Chapter on "Mitigation of Damages."

In any event, in code States circumstances in mitigation of damages must be specifically set forth in the answer, and it should be stated that they are in mitigation of damages. The rule, however, is one relating to tort actions because mitigation of damages relates to that class of actions. 5 Enc. Pl. & Pract., 774–75 (many cases cited in note 1); *Fenstermaker* v. *Tribune Pub. Co.*, 13 Utah, 532.

There was nothing in the answer of defendant to apprise plaintiff that any evidence of this nature would be offered, and the rule of code practice is that a defendant will not be allowed to give evidence of a defense by way of confession and avoidance not set up in his answer. Of course this rule also requires that the defense when specifically set up must be an allowable defense. 1 Enc. Pl. & Pract., 830–31. (Note 4.)

On December 31, 1896, plaintiff became agent of the defendant corporation under a written contract which provides, among other things, "That the said party of the first part (a corporation) does hereby appoint the said party of the second part agent of the said party of the first part, for the purpose of canvassing for applications for insurance on the lives of persons who shall be satisfactory to the said company, and for the purpose of collecting and paying over premiums on such insurance, when effected, * * * and that he will be governed in the business of his agency by the rules and instructions of said company, and such instructions as he may receive from said company from time to time. * * * That the compensation for said services is to be a commission upon the premiums which shall be paid in cash to, and received by, the said company on all policies of insurance effected with the said company, by or through the procurement of the said agent, which commission shall be as follows: * * * "

The contract provided for a commission to the agent on policies like that of Mr. Beck of fifty per cent on the first year's premium, and five per cent on the premiums for subsequent years, during the continuance of the contract, which was for five years. It also provides that the plaintiff should not make, alter, or discharge any contract, or waive forfeitures, and also provides for the collection of notes.

Under this contract, plaintiff, on August 2, 1897, procured and submitted to the defendant corporation an application from John Beck for insurance upon his life in the sum of $100,000. After receiving the application, and before its acceptance, the defendant company had

knowledge that Beck had been declined as a risk by another life insurance company, and required several examinations by its local physicians of his urine for traces of kidney disease, and also investigated his financial condition. Defendant company thereafter accepted the risk, and issued and delivered to Beck its policy for $100,000 on his life, and also gave Beck its receipt for $5,702, that being the entire amount of the premium for the year. The first year's premium was paid by three promissory notes given by John Beck, as follows: $2,000 due September 19, 1897; $2,000 due November 19, 1897; $1,702 due January 19, 1898. The $2,000 note due September 19, 1897, was paid at maturity, and plaintiff received $1,000 commission thereof, and forwarded the balance to the company.

About November 4, 1897, one Charles St. Morris, an agent of a rival insurance company, wrote and telegraphed the defendant company concerning Beck's poor financial condition, and endeavored to secure a cancellation of the policy on his life on the ground of fraud in the application, and the defendant, after several communications had passed between them, thereafter requested him to consult the plaintiff in regard to the cancellation of the policy. He did so, and plaintiff, apparently annoyed at outside interference, declined to act without direct instructions of the company. Plaintiff wrote to defendant on November 8, 1897, that he was of the opinion that they had made a mistake in listening to the assertions of rival agents, and unless they had information outside of St. Morris, or if there were facts that he knew nothing about, or if there was any good reason for cancelling the policy, he would make every effort in that direction; that St. Morris had made threats to cancel all of Beck's insurance unless he was paid a premium on the Sun Life Insurance

policy, and that St. Morris was using improper means to gain an advantage over him for the benefit of himself or his company. He also complained that St. Morris was appointed over his head to cancel the policy, and that it appeared to him that the defendant company was working against his interests. Plaintiff else requested that a special agent be sent to investigate the Beck insurance. Upon such request the defendant company sent its agent, Mr. Waters, to investigate the matter and see whether the risk was desirable, without authority in said agent to negotiate for the surrender of the policy, if, upon investigation, he thought best to do so. Upon his arrival, plaintiff advised Waters that he did not believe the risk was undesirable, but if, upon full investigation, he found any fraud connected with the policy, which he knew nothing of, he would be willing to cancel the policy and would assist in its cancellation. Thereafter, on November 11, Waters accompanied by the plaintiff called upon Mr. Beck, and Waters stated to him in plaintiff's presence that he was advised that Beck was suffering from Bright's disease, and that in as much as his risk had been declined by another insurance company on account of kidney trouble, and the fact was suppressed in the application his company desired another examination. The reply was, in substance, that if examinations had to be made every month he would drop the whole thing; that he did not want the insurance in the first place. On November 12, Waters and plaintiff called upon Beck, and Waters then and there negotiated with Beck to pay Beck $500, and surrender to him the unpaid premium notes in consideration that Beck should surrender to the company the policy for the $100,000 insurance on his life. This was agreed to by the company's agent and Beck, and Beck receipted the policy in full and it was cancelled in consideration of

such payment and surrender of the notes. The plaintiff took no active part in these negotiations, but offered no objection to the surrender of the policy and notes. He testified that he did not know that he had any right to his commission on the unpaid notes until he consulted an attorney prior to the bringing of this action, and that the question of commission in such cases had never arisen before, and that he never waived his right to such commission, and that nothing was said to him about it; that he felt that he was entitled to the commission, but said nothing about it because Waters told him as he went away that it was hard on him, and that he would take the matter up with the company and see what he could get them to do. After this the company wrote that they would not charge the plaintiff the $100 previously advanced to him, and would give him $100 extra, and 10 per cent additional commission on all business; thereafter he charged 60 per cent commission instead of 50 per cent and so reported to the company.

Mr. Waters testified, among other things, that he obtained the surrender of the Beck policy because he was convinced upon investigation that the risk was undesirable; that Beck was in financial difficulties, which involved a moral hazard, which the company did not care to assume.

Thereafter the defendant company wrote to plaintiff telling him that they did not attach any blame to him or the medical examiners in the Beck matter, and that they had done their full duty; that they understood agents of other companies considered Beck a good risk, and that competent physicians had passed upon him as such. On September 13, 1898, plaintiff resigned as agent of the defendant company, demanded his commissions on the Beck notes, and brought this action to recover the balance claimed of $1,651. The jury, under instructions of the

court, found in favor of the plaintiff, and the defendant appeals, assigning error in the admission of testimony, and in the charge to the jury and rulings of the court.

After stating the facts, MINER, J., delivered the opinion of the court:

The first question for consideration is whether or not after the plaintiff had obtained the application for insurance from Mr. Beck, and the defendant had accepted said application and issued the policy to Beck receiving his notes in payment of the first year's premium, receiving payment of one note, whether the defendant before the maturity of any of the remaining notes could, by contract with Beck, purchase the surrender of the policy for a consideration of $500 cash, and the surrender of the two unmatured notes, without proof of fraud, or without an express waiver by the plaintiff, and thus deprive plaintiff of the commissions on the remainder of the premiums, under the contract providing that commissions should be paid upon the premiums which should be paid in cash and received by the defendant.

The facts show that plaintiff had performed his part of the contract and obtained an application for insurance that was satisfactory to the defendant; that after full examination defendant accepted Beck's application and delivered a policy to him, and gave its receipt in full payment of the first year's premium. Having accepted the Beck notes, a legal obligation, as between the defendant and the plaintiff, rested upon the defendant, to collect the notes when they became due, and out of the proceeds thereof pay the agreed commission. This obligation can not be avoided under the contract by the claim that the company afterward learned that the risk was undesirable or that it understood that Beck had been refused insurance in another company. It might forfeit the policy for fraud in

procuring it, for misstatements in the application, or for non-payment of the notes, but this course was not attempted. On the contrary the company recognized the binding force and legality of the policy by paying $500 in cash and surrendering the notes not yet due in order to purchase Beck's rights therein and relieve itself from liability. The company could not thus relieve itself from su h liability to the plaintiff for the commission earned by voluntarily placing beyond its power the right to collect the cash on the unmatured notes because it had purchased the policy and in part consideration thereof had surrendered the notes out of which the commissions should have been paid. The notes were not due. Having sold them to Beck, it is estopped from denying liability on the contract simply because it refused to colle t the cash on the notes as it should have done, or should have attempted to do, unless excused from that duty by the plaintiff. By receiving back the policy the defendant may have received a full equivalent for the notes. The contract does not provide that the defendant after having accepted the risk shall have the right to buy a surrender of the policy and thereby relieve itself from its duty to collect the notes in payment of the premiums.

A principal who agrees that his agent shall receive a percentage of money or commissions to be paid upon a contract secured through such agent, for the benefit of both, can not dispose of his own right to receive the fund, and thus deprive the agent of the reward for his services. Otherwise the principal might receive a full equivalent for the original fruits of the agent's labor, and yet not pay him a dollar. The principal can not do this without the agent's express consent, and in this case the evidence does not show that consent was given.

The plaintiff was simply present when the agreement to

purchase the surrender of the policy and notes was made for the consideration specified. The agent had no power to oppose the purchase or surrender; nor was his assent thereto required. Under the contract he was required to perform such other services as the company desired him to perform. So far as appears he may have gone with Waters as required by the contract. He was willing the company should do as it pleased, although he had previously discouraged it from taking up the policy, and there was nothing in his subsequent acts to justify a release of his rights, the nature of which under the contract and the terms of the policy, he was ignorant. *Hix* v. *Edison Electric Light Co.*, 41 N. Y. Supp., 680; Bishop on Contracts, Sec. 690; *Wolf* v. *Marsh*, 54 Cal., 228.

It is also insisted that the plaintiff waived his right to the commission, and therefore is not entitled to recover; that he is estopped by his conduct to insist upon his legal rights, and that the court erred in giving its instructions on these subjects to the jury.

By the contract it is provided that the plaintiff shall not make, alter, or discharge any contract or waive forfeitures. Under the contract, Beck and the company could deal with the policy as they pleased, without the consent of the plaintiff. The plaintiff, under the contract, had no right to interfere in such dealings and had no power to prevent the company from giving or bargaining away the results of his labor, but in doing so the company acted at its peril. Had the plaintiff objected to the purchase of the policy, it would not have availed him. Plaintiff states that he stated to defendant's agent, Waters, that he objected to taking up the policy unless fraud was shown. In this he is disputed by the company's agent. The jury found the facts against the company.

On the question of waiver the court instructed the jury

that if the plaintiff waived his right under the contract he could not recover, and that such waiver was an affirmative defense, and the burden of showing it was on the defendant. The court further instructed the jury, as follows: "You are further instructed that waiver is the intentional relinquishment of a known right. In general, no man can be bound by a waiver of his rights unless it is made with full knowledge of the rights which he intended to waive. So, in this case, if you believe, from the evidence, that the plaintiff was ignorant of the fact that under his contract he was entitled to commissions on the balance of the first year's premiums, provided the defendant purchased the surrender of the Beck policy, then he can not be found to have waived or relinquished his right to the commission. The fact that the plaintiff deemed the commission lost to him because of the act of the company in purchasing the surrender of the Beck policy, does not constitute a waiver or relinquishment of his right to the commission, unless you find that at the time or times he so expressed himself to the defendant, or its agents, he knew he had a right to insist upon payment of the commission, even though the company, for reasons of its own, bought the surrender of the Beck policy, and with such knowledge plaintiff then intentionally relinquished the right to the commission.

"You are instructed that the defendant had no right to wantonly or arbitrarily purchase the surrender of said policy, and to surrender to said Beck his notes; but if the defendant company, after the issuance of the said policy to said Beck, believed it to be to its best interests to purchase from Beck the surrender of said policy by surrendering to said Beck said notes, then the defendant had the right to purchase the surrender of the said policy by the payment of $500 and returning to said Beck his

notes; and if you believe, from a preponderance of the evidence, the plaintiff was fully informed and cognizant of all the facts and circumstances attending the transaction between defendant and Beck, and that he, by his acts, declarations, or conduct, intentionally waived to the defendant his rights to receive commissions on the amount of said notes surrendered, and also that the plaintiff had full knowledge of his rights in this respect, then the plaintiff can not recover, and your verdict should be for the defendant."

The question of the plaintiff's knowledge or ignorance in the matter is involved. If the plaintiff was ignorant of the fact that he was entitled to his commission at the time and after the defendant purchased the surrender of the policy, and did not intentionally waive his right therein after full knowledge, he was entitled to recover. This is so because a waiver is an intentional relinquishment of a known right, and there must be both knowledge of the existence of the right and an intention to relinquish it. The waiver, if any, was a question of intent on the part of the plaintiff. Knowledge of the rights he had, and an intention to waive such right should be made plainly to appear before a court or jury would, in such a case as this, be justified in declaring it.

It is said that the plaintiff was bound to know the law, and that he must have known the facts. So far as the written contract alone was concerned, if not ambiguous or contradictory, this may be true; but when we consider the long course of dealing between the company and Beck, the company and St. Morris, and the company and Waters, concerning which plaintiff was largely uninformed; the company's dealings with plaintiff in reference to the Beck policy, and the ambiguous character of the contract, it can not be said that the plain-

tiff had full knowledge of all the facts, or of his rights that would follow such a complicated state of facts. Indeed, the distinguished counsel representing the respective parties to the action, after a careful and critical review of the law and the evidence, do not agree as to what the facts are, what rights the contract bestows, or what the rights of the plaintiff are under the contract and evidence as it is presented to the court.

In *Bennecke* v. *Conn. Mut. L. Ins. Co.*, 105 U. S., 355, it is said: "A waiver of a stipulation in an agreement, must, to be effectual, not only be made intentionally, but with knowledge of the circumstances. This is the rule when there is a direct and precise agreement to waive the stipulation. *A fortiori* is this the rule when there is no agreement either verbal or in writing to waive the stipulation, but where it is sought to deduce a waiver from the conduct of the party." *Montague* v. *Massey*, 76 Va., 314; *Shaw* v. *Spencer*, 100 Mass., 382; *Hoxie* v. *Home Ins. Co.*, 32 Conn., 40; *Garesche* v. *Loebing*, 48 S. W., 657; 96 Va., 649.

The further facts are that it does not appear from the answer or from the testimony that the defendant was misled by the conduct of the plaintiff; or that it would have acted differently had the plaintiff asserted his legal right to the commission at the time of the purchase of the policy. It appears that St. Morris and the company were negotiating with reference to the cancellation of the policy for fraud in the application. Waters, under instructions of the company, cancelled the policy because it was undesirable. Plaintiff did not know what his rights were, but did not want the policy cancelled unless for fraud. The defendant afterward informed the plaintiff that no blame whatever was attributable to him or to the examining physicians in procuring the application, and that other companies considered the risk a good one.

All the facts connected with the assumed waiver or estoppel, plaintiff's right to the commission under the contract, and the purchase of the policy by defendant, were sufficiently and properly submitted to the jury by the instructions quoted and others given by the court.

Under the circumstances of this case we find no reversible error arising from the instructions of the court to the jury; nor do we find that the court erred in refusing to give the instructions requested by the defendant.

In its defense the defendant offered in mitigation of damages to show that Beck was insolvent at the time the notes were surrendered. The testimony was objected to on the ground that it was immaterial, irrelevant, and incompetent, and on the ground that it was estopped by the voluntary sale of the notes before they became due, of interposing that defense. This testimony was rejected.

We are of the opinion that there was no error committed in the ruling of the court. The defendant could have cancelled the policy for fraud, if shown.

The policy would lapse and become invalid by its terms if the notes were not paid at maturity. But the defendant did not see fit to take this course. After it had accepted the notes in payment of a year's premium, and after one of the notes had been paid, and before the balance of the notes became due, it voluntarily made a bargain with Beck to buy from him the policy in consideration of $500, and the surrender of the remaining notes, without obtaining the plaintiff's assent thereto. By selling the notes and buying the policy, the defendant allowed Beck credit for the value of the notes.

The defendant voluntarily placed itself in a position whereby it had no power to collect the notes, as it was in duty bound to do, or endeavor to do, and therefore it can not now be heard to say that the maker was insolvent

when the notes were surrendered. *Hix* v. *Edison Elec. Light Co.*, 41 N. Y. Supp., 680; *Wolf* v. *Marsh*, 54 Cal., 228.

In addition to this, the defense of Beck's insolvency sought to be interposed on the trial was new matter offered in mitigation of damages, was not pleaded, or in any manner suggested in the answer. The action was on a contract to recover plaintiff's commissions from defendant, not from the maker of the notes, and if such a defense was admissible at all in such a case as this, it should have been set up in the answer. Sec. 2968, Rev. Stat., requires a statement of any new matter constituting a defense or counterclaim to be set up in the answer. *McKyring* v. *Bull*, 16 N. Y., 297; *Morrill* v. *Irving Ins. Co.*, 33 N. Y., 443; Pom. Code Rem., Secs. 693, 694, 695; *Foland* v. *Johnson*, 16 Abb. Pr., 235; *Gilson* v. *Price*, 18 Nev., 118; *Babb* v. *McKey*, 10 Wis., 314; 5 Enc. Pl. & Pr., 774; 1 Suth. on Damages, Secs. 165, 166; *Fenstermaker* v.. *Tribune Pub. Co.*, 12 Utah, 532; 1 Enc. Pl. & Pr., 830; *Piercy* v. *Sabin*, 70 Am. Dec., 692; *Williams* v. *Hill*, 72 N. Y., 36.

Upon the whole record we find that the instructions given fully and fairly covered the issues in the case. The non-suit was properly denied, and no reversible error appears in the record.

The judgment of the district court is affirmed, with costs.

Baskin, J., concurs.
Bartch, C. J., dissents.