# ENSIGN et al v. UNITED PACIFIC INS. CO.

No. 6729. Decided February 16, 1945. (155 P. 2d 965.)

See 32 C. J. Insurance, Sec. 157. Insurance agent's right to commission on renewal premiums, note, 79 A. L. R. 475. See, also, 29 Am. Jur. 136.

*E. J. Skeen,* of Salt Lake City, for appellants.

*E. C. Jensen* and *Robert A. Burns,* both of Salt Lake City, for respondent.

McDONOUGH, Justice.

This is an appeal from a judgment on a directed verdict, "no cause of action." The question for determination is whether the trial court erred in directing a verdict in favor of defendant.

On March 22, 1942, the defendant United Pacific Insurance Company entered into an agency contract with plaintiffs, whereby the plaintiffs were made nonexclusive agents to solicit and submit applications for insurance on various classes of risks. The contract based compensation on percentages of premiums collected and by an express provision the agency was required to notify the defendant if any premiums were uncollectible in order to relieve itself of any responsibility for collection of the same.

A public liability policy for Airway Motor Coach Lines, Inc., was applied for in March 1942, in the defendant company. Owen Bunker, an insurance broker, who placed insurance business with plaintiffs and with other agencies, had the application placed through plaintiffs because of some arrangement for division of the commissions. The policy provided for computation of premiums on the basis of gross receipts, premiums to be paid quarterly, with adjustments to be made at the end of the year. Two quarterly premiums were paid to plaintiffs, and the third one would become payable on September 22, 1942. The policy was cancelable by the insured by the latter merely giving the insurer notice of its election to do so. After the policy was written the Public Service Commission granted the carrier an increase in passenger fares, with the result that the premiums would automatically be increased by about 40% without increasing the liability of the insurer.

About September 1, 1942, three weeks before the next premium would become due, the Airway officials notified Bunker, their broker, that in view of this change in fares the company desired to obtain a modification of the policy so that instead of computing premiums on a basis of gross receipts they would be computed on a mileage basis.

Bunker informed the plaintiffs and requested a quotation of a new rate immediately. The Airway officials were concerned only with results and they did not care whether the existing policy were changed by mere endorsement or a new policy were issued. They advised Bunker that they desired immediate action.

Plaintiff Vadner, upon being advised by Bunker of the insured's wishes, merely called on the telephone the office of defendant, and learning that the local office manager, one Webber, was out of town, requested that the latter call upon his return. There is no evidence in the record that plaintiffs made any effort to communicate with any officer of defendant company relative to Airway's request, or its urgency, until about September 18 or 19, when plaintiffs learned that Airway company had dealt with a competing agency. Plaintiff Vadner testified that Webber the office manager, refused at such time to quote a rate and admitted to him that a "deal" had been made with the Selbach Insurance Agency, because such agency had "offered us a volume in excess of $20,000 a year."

Between the time plaintiffs were first requested to furnish a rate on a mileage basis for Airway and the date that Vadner finally talked to a representative of defendant company, plaintiffs informed Bunker, the broker, that they had been unable to obtain a rate. Bunker attempted to induce Airway officials to permit him to have a policy written by the General Insurance Company of which he was a general agent; but the record is not clear as to whether this attempt to place the business in another company occurred before or after the plaintiffs notified him that they had been unable to obtain a rate on a mileage basis. In any event, when plaintiffs failed to obtain for Bunker this change in premium base, Bunker ceased to broker any more business with them. At about this same time, a representative of the Selbach Insurance Agenecy who handled some business for the attorney for Airway, was by such attorney introduced to an Airway official, and the latter discussed the problem with him. He evi-

dently had no difficulty in obtaining a rate on a mileage basis from defendant company.

After some conversations between Bunker and the Airway officials, it was suggested by the latter that in view of the urgency of the matter, an application for a new policy on a mileage basis should be submitted through Selbach Insurance Agency with an understanding that the old policy be canceled and that the new policy go in effect on September 22.

It is not clear whether the new policy was written before plaintiff Vadner had his conversation with Webber of defendant company, but apparently at such time all arrangements for the new policy and for the cancelation of the original policy had been made.

It is appellants' contention that under the recited state of facts, it was error for the trial court to direct a verdict for defendant. They argue that when a policy is written through an agent, the latter has an interest in keeping it in force because under his agreement he is paid a commission; and that coupled with the express agreement of the insurer to pay a commission is a duty or implied promise on its part to take no arbitrary action to prevent the collection thereof, which duty or promise the respondent, under the evidence violated. They cite: *Reed* v. *Union Central Life Ins. Co.*, 21 Utah 295, 61 P. 21; *August Rebhan Co.* v. *Taylor, et al.*, 153 Wis. 405, 141 N. W. 257, 258; *Knight* v. *Etna Life Ins. Co.*, D. C. 34 F. 2d 805; *Oliver* v. *Katz*, 131 Wis. 409, 111 N. W. 509; *W. R. O'Brien, Inc.* v. *Vehicle Underwriting Agency Corporation*, 175 A. 256, 12 N. J. Misc. 815; and *Madden* v. *Equitable Life Assurance Society*, 11 Misc. 540, 32 N. Y. S. 752.

Of the cited cases, that most nearly in point is *August Rebhan Co.* v. *Taylor, et al.*, supra. The facts of that case are sufficiently shown in the following quotation from the opinion [153 Wis. 405, 141 N. W. 258]:

"The defendants were the agents of the plaintiff corporation to sell insurance at certain rates in this territory for a certain com-

mission. While acting as such agents, they secured prospective purchasers of insurance, who were ready to purchase if they could secure a satisfactory rate. The defendants were unable, however, to induce the prospective purchasers to take the insurance at the rate fixed by the plaintiff, and so notified the plaintiff; the plaintiff thereupon, while defendants' agency still continued and without defendants' knowledge, stepped in and reduced the rate, and thereby sold the insurance themselves to the said purchasers, through Mr. Eldred, who was in legal effect the agent of the purchasers. In substance, the principal prevented the agent from effecting the sale and earning his commission by fixing a prohibitive price, and then secretly lowered the price, and by this means accomplished the sale itself, without the agent's knowledge, and while the agency still existed. That the payment of the agent's commission cannot be avoided by this means is settled. *Oliver* v. *Katz*, 131 Wis. 409, 111 N. W. 509; *O'Keefe* v. *Stephenson*, 135 Wis. 342, 115 N. W. 805; *Terry* v. *Bartlett* [153 Wis. 208], 140 N. W. 1133 (present term.) We think the court was right in allowing commissions to the defendants up to October 1, 1911, notwithstanding the temporary cancellation of the policies from June 22 to October 1, 1910, for it quite plainly appears that this temporary cancellation was principally for the purpose of defeating the defendants' claim for commissions. Judgment affirmed."

It should be added that the insurance involved had been originally placed by the agent who claimed a right to a commission on the renewal premium.

As appears from a comparison of the recited facts in the instant case and those set out in the foregoing quotation, the substantial difference in the situations thus revealed is that in the Wisconsin case the agent with diligence requested from his principal the quotation of the lower rates subsequently secured from the latter by a rival agent. In the case here the request of the insured was neither brought to the attention of the principal by the plaintiffs nor was anything done by them other than the making of the ineffectual telephone call to the local office of defendant to secure such rates, until after arrangements were made by the insured to secure a policy through another agency.

Conceding the correctness of the decision in the Wisconsin case, as we must, is the factual difference noted such as to justify the contrary result herein reached?

We are of the opinion that it is. The new policy written by defendant on the changed premium rate base was delivered on September 21, which was a Monday. Not until the previous Friday had plaintiffs made contact with defendants through the local office or otherwise. No letter or wire was dispatched to the general offices of the company advising defendants of the insured's request for a change in the premium rate base; though the broker, Bunker, had contacted them several times in regard thereto over at least a period of two weeks. A new policy, or a change in the existing one, was desired by September 22. From the time plaintiffs finally contacted the local office of defendants until September 22, only three business days at most intervened. In the meantime, a competing agency had been introduced to an officer of the insured and at the latter's instance secured the desired premium rate changes.

If it be the law that fair dealing requires in such circumstances that the principal contact the agent who originally placed the insurance and inquire of him whether he desired to make an effort to secure the business in question then the principal would be required to hazard the ■ loss of the business to a competitor in order to protect the commissions of an agent who had done nothing to protect them himself. No case has been cited, nor have we found any, which goes so far. Appellants were entitled to commissions only on premiums collected by them. Respondent could not, of course, by arbitrary action cancel the policy with the object of preventing the collection of premiums by plaintiffs and of securing thereby an advantage to itself. Nor, as pointed out in the August Rebhan Co. case, supra, could it arbitrarily refuse quotation to an agent of a proper rate and secure the insurance through another at such rate, at least where the business contact with the insured had been originally made by the

agent. To do so would evidence a lack of fair dealing which would deprive appellants of the contemplated fruits of their contract with respondent. But neither may the agent through lack of diligence on his part chance the loss of such business by the insurer and still be entitled to the benefits accruing as a result of the diligence of another. This is precisely what appellants demand.

But it is pointed out that the local office manager of defendant, when finally contacted, gave as a reason for issuing the new policy through another agent that such agent had promised to bring in a volume of $20,000 a year. This fact, had the circumstances surrounding the transaction been different, might be sufficient to permit a jury to infer an arrangement whereby the defendant through its local office manager had cut around defendants and deprived them of commissions in order to benefit itself. Defendant has cross-assigned error on the ground that such evidence was inadmissable against it. We need not resolve such question because in light of the undisputed facts such inference could not reasonably be drawn from the mere statement of the office manager. The evidence, viewed most favorably from the standpoint of appellants, fails to show any collusion between defendant and the competing agency and fails to show, even assuming the competency of the evidence relative to the statement in question, that there was collusion between defendant and the competing agency to circumvent the right of plaintiffs to make further collection of premiums and thus earn the commissions thereon.

The evidence discloses no breach of duty owed by defendant to plaintiffs. The action of the trial court in directing a verdict and entering judgment thereon was, therefore, not error. The judgment is affirmed. Costs to respondent.

LARSON, C. J., and TURNER, WADE, and WOLFE, JJ., concur.