## JOSEPH F. POTTER, RESPONDENT, v. THE AJAX MINING COMPANY, APPELLANT.

RES ADJUDICATA—GENERAL RULE—OBITER DICTA. CHAMPERTY— LAW-OF—MODIFIED—SEC. 3683 C. L. U. 1888. ATTORNEY'S COMPENSATION — CONTRACT FOR — UNDER SEC. 3683 C. L. U. 1888 — RIGHTS OF PLAINTIFF—RIGHTS OF ATTORNEYS. LOAN BY ATTORNEY TO CLIENT—FOR PAYMENT OF COSTS—NOT AGAINST PUBLIC POLICY. CHAMPERTOUS CONTRACT—CANNOT BE QUESTIONED BY THIRD PARTY. CHAMPERTY—AS BETWEEN PLAINTIFF AND HIS ATTORNEY—CANNOT AVAIL DEFENDANT AS DEFENSE TO A LEGAL OBLIGATION. DEFENSE OF CHAMPERTY — MUST BE SPECIALLY PLEADED.

*Res Adjudicata—General Rule—Obiter Dicta.*

As a general rule, a previous ruling and decision, by an appellate court, upon questions arising in a case before it, is a final adjudication of those questions in that suit upon the same state of facts, from the consequences of which the court will not depart in a subsequent appeal; but the rule does not apply to the argument or to expressions or illustrations in the argument that are *obiter* and not pertinent nor required for a disposition of the particular questions arising and decided in the case. [1]

*Champerty—Law of—Modified—Sec. 3683 C. L. U. 1888.*

Sec. 3683 C. L. U. 1888 modified the force and effect of the com-

---

[1] *Brim* v. *Jones*, 13 Utah, 40; *Silva* v. *Pickard*, 14 Utah, 245; *Venard* v. *Green*, 4 Utah, 458; *Bank* v. *Lewis*, 13 Utah, 509; *Krantz* v. *R. G. W. R'y*, 13 Utah 1.

mon law as to champertous contracts, and left the mode and manner of compensation of attorneys to agreement between parties.[1]

*Attorneys Compensation—Contract for—Under Sec. 3683 C. L. U. 1888—Rights of Plaintiff—Rights of Attorneys.*

Where a contract made between attorneys and plaintiff, at a time when Sec. 3683 C. L. U. 1888 was in force, gave the attorneys power to act in the case and as compansation, one-half the amount received by plaintiff either by judgment or settlement, plaintiff, although having the right to settle his damages, could not defeat the rights of the attorneys under the contract by a fraudulent settlement and after such settlement by plaintiff, the attorneys still had a right, under the statute, to proceed to judgment for the purpose of ascertaining the amount of their compensation under the contract.

*Loan by Attorney to Client—For Payment of Costs—Not Against Public Policy.*

It is not against public policy for an attorney to loan his client money with which to pay costs of suit, nor to advance the money necessary to carry on the suit, as needed, when such advances are made as a loan, with the express understanding or agreement for its repayment, and there is no contract of indemnity against the clients' liability to pay costs.

*Champertous Contract—Cannot be Questioned by Third Party.*

A stranger to a contract, has no right to question its validity in a collateral attack, even though such contract, as between the parties to it, may be champertous.[1]

*Champerty—As Between Plaintiff and His Attorney—Cannot Avail Defendant as Defense to a Legal Obligation.*

A defendant cannot avoid a legal obligation simply because the plaintiff and his attorneys have entered into a champertous contract, affecting the proceeds to be recovered.

*Defense of Champerty—Must be Specially Pleaded.*

Where champertous contracts are questions between the parties who made them, a plea or answer of the fact on the part of the defendant is necessary in order to make the defense availing.[1]

(Decided July 11, 1900.)

---

[1] *Croco* v. *O. S. L. R. R.*, 18 Utah, 321; *Reed* v. *Insurance Co.*, 21 Utah, 295.

Appeal from the Fifth District Court Juab County. Hon. E. V. Higgins, *Judge.*

Action by plaintiff for personal injuries alleged to have been inflicted through the negligence of defendant company. Defendant company effected a compromise with plaintiff direct without considering plaintiff's attorneys. Plaintiff's attorneys in this action seek to prosecute the same for their benefit claiming a lien on plaintiff's cause of action. From a judgment in favor of the attorneys and fixing their conpensation defendant appealed. *Affirmed.*

*Messrs. Bennett, Harkness, Howat, Sutherland* and *Van Cott*, for Appellant.

The contract between the plaintiff and his attorneys is against public policy and void, and that being the case, this suit being maintained, in the name of the plaintiff, solely for the purpose of enforcing the contract and establishing a lien on the plaintiff's cause of action against the defendant, it cannot be enforced.

But if the contract between the plaintiff and his attorneys was one that could be enforced by the attorneys, still there can be no recovery in this case because the attorneys have no lien upon the plaintiff's cause of action.

At common law an attorney had a lien upon papers and money of his client in his hands as attorney, and also upon any judgment which he may have recovered for his client. But an attorney has no lien at common law upon his client's cause of action. At common law he could acquire a lien upon his client's cause of action only in two ways:

If the cause of action was in its nature assignable, then the client could assign to this attorney the cause of action

as security for his attorney's fees, and if the opposing party knew of the assignment, then he could not settle with the plaintiff and disregard the assignment of the cause of action to the attorney, but the attorney did not acquire thereby an attorney's lien. The assignment would have been just as operative if the client had made it to his grocer or to his butcher, as to the attorney.

The only way by which an attorney could acquire a lien upon his client's cause of action, was when he obtained judgment upon it, and the cause of action became merged in the judgment.

But neither of these principles can assist the plaintiff in this case. The cause of action in this case was for personal injuries sustained by the plaintiff, and the cause of action being *ex delicto*, it was not assignable. Causes of action *ex delicto* are not assignable at common law, and can only be assigned when the statute so provides. *Railway Co.* v. *Ackley*, 49 N. E. 222; *Coughlin* v. *Railroad Co.*, 71 N. Y. 443; *Kansas Co.* v. *Behm*, 54 Kan. 751; *Central R. Co.* v. *Brunswick R. Co.*, 87 Ga. 386.

The plaintiff's cause of action was for personal injuries to himself, and therefore under the law of this State, he could not have assigned his cause of action to anyone else, because unless it is expressly authorized by statute, a cause of action for personal injuries is not assignable. *Railway Co.* v. *Ackley*, (Ills.) 49 N. E. 222.

That being the case, the contract between the plaintiff and his attorneys cannot be considered to be an equitable assignment. No right to, or interest in, or lien upon the cause of action passed to the plaintiff's attorneys by the contract unless the common law gave to the plaintiff's attorneys a lien upon the plaintiff's cause of action. Notwithstanding the provisions of the contract between the

plaintiff and his attorneys, that the plaintiff should not settle the suit between himself and the defendant without the consent of the plaintiff's attorneys, the plaintiff had the absolute right at any time to settle and compromise the suit. *Railway Company* v. *Ackley, supra; Coughlin* v. *Railway Company*, 71 N. Y. 443.

Even if the plaintiff's attorneys had a lien under the statute, which is a copy of the New York statute adopted in 1879, yet under the rulings of the courts of New York the plaintiff would still have the right to settle his cause of action without his attorney's consent. *Lee* v. *V. O. Co.*, 126 N. Y. 579; *Poole* v. *Belcha*, 131 N. Y. 200; *Peri* v. *Railway Co.*, 152 N. Y. 521–7; *Printing Co.* v. *Printing Co.*, 38 N. Y. S. 784.

*Messrs. Powers, Straup & Lippman*, and *Joseph E. Page, Esq.*, for respondent.

"Upon a second appeal, when the questions are the same, this court will not reverse its rulings as made on the first appeal." *Venard* v. *Green*, 4 Utah, 458; *Brim* v. *Jones*, 13 Utah, 440; *National Bank* v. *Lewis*, 13 Utah, 509; *Krantz* v. *Railroad*, 13 Utah, 1; *Silva* v. *Pickard*, 14 Utah, 245; *Reese* v. *Morgan, Min. Co.*, 54 Pac. 760; *Horton* v. *Jack*, 115 Cal. 29; *Allen* v. *C. C. R. Co.*, 22 Colo. 238; 43 Pac. 1015.

The principle of *res adjudicata* on a second appeal of the same cause applies to all questions which might have been decided as materially involved in the case, whether actually decided or not. Ency. Plead. & Prac. Vol. 2, p. 380; and citing numerous cases from eleven different states; *Bradley* v. *Norris*, 67 Minn. 48, 69 N. W. 624; *Com.* v. *Tate*, Ky. L. 1045, 33 S. W. 405; *Paducah L. C. & I. Co.* v. *Cochran*, (Ky.), 37 S. W. 67.

Should this court, however, hold that it will give further

consideration of the errors in the premises, we contend that the trial court under the circumstances rightfully set aside said order of dismissal. The proof of the fraud and collusion of the said settlement of the cause to cheat and defraud respondent's attorneys, was properly and sufficiently shown to the court, who because of such said fraud and collusion set aside said order. *Potter* v. *Ajax Min. Co.*, 5u Pac. 270, and cases there cited; *Sewing Machine Co.* v. *Bontelle*, 56 Vt. 570; *Walker* v. *Sargeant*, 14 Vt. 247, with notes; *McKenzie* v. *Wardwell*, 61 Me. 136; *Andrews* v. *Morse*, 12 Conn. 444; *Hister* v. *Den*, 17 N. J. L. 438; *People* v. *Pack*, 74 N. W. 185; *In re Wilson*, 12 Fed. 235; *Koons* v. *Beach* (Ind.), 45 N. E. 601, 46 N. E. 587; *Justice* v. *Justice*, 115 Ind. 201; *Howard* v. *Osceola*, 22 Wis. 454; *Marquat* v. *Mulvey*, 9 How. Pr. 460.

"The doctrine of champerty and maintenance does not prohibit an attorney retained in a case from advancing the necessary incidental costs of the litigation; and even though he advances the money to pay such costs without special agreement, he may recover from his client the amount so advanced."

In order to be champertous, there must be "an indemnity against the client's liability to pay costs." Am. & Eng. Encys. Law (2d Ed.), Vol. 5, p. 829; and cases there cited both from English courts and from our States.

Also, where persons are poor, it has been frequently held one may absolutely pay his costs of suit and the same is not champertous or otherwise unlawful. *Dunne* v. *Herrick*, 37 Ill. App. 180; *Perrine* v. *Dunn*, 3 Johns. Ch. 508; *Sahpley* v. *Betlowi*, 4 N. H. 347.

However, if there shall be ground for holding said contract void, we again here urge as we did on the former appeal, that appellant, not being a party to such contract

but a stranger thereto, and the same not in any wise having been made for its use or benefit, cannot assert or defend any claim or defense arising thereunder or thereto. And even if appellant had the right to assert any claim or make any defense to the said contract because of it being champertous, it is not in position to be heard thereon, for such defense was not plead. *Croco* v. *R. R.*, 54 Pac. 988, and cases cited; *Brumback* v. *Oldham*, 1 Idaho, 709; *Allison* v. *Chicago R. Co.*, 42 Iowa, 274; *McMullen* v. *Guest*, 6 Texas, 275; Bliss on Code Pleading, S. 364; *Moore* v. *Ringo*, 82 Mo. 468; *Suit* v. *Woodhall*, 116 Mass. 547; *Dickson* v. *Burke*, 6 Ark. 412; 2 Saunders Pl. 1041; Ency. Pl. & Pr. title Champerty; *Gage* v. *Du Puy*, 137 Ill. 652; 24 N. E. 541; *Hart* v. *State*, 120 Ind. 83; 21 N. E. 654; *Zeigler* v. *Mize*, 132 Ind. 403; 31 N. E. 945; *Com. R. M. F. Ins. Co.* v. *Way*, 62 N. H. 622; *Courtright* v. *Grimes*, 42 Neb. 701.

### STATEMENT OF FACTS.

This cause was before this court on a former appeal, and is reported in 19 Utah, 421. The statement of facts as found in that case are substantially the same as in this, the trial being upon, substantially, the same state of facts. It appears from the record that, on October 11, 1897, plaintiff filed his verified complaint against the defendant in Juab county, alleging that he was injured through the negligence of the defendant while in its employ, and prayed judgment in the sum of $15,000. The complaint was signed by J. E. Page, and Powers, Straup and Lippman, attorneys for the plaintiff. On October 30, 1897, the defendant, by its attorneys, filed its verified answer denying all the material allegations in the complaint. Prior to the commencement of this suit, and on the 23d day of July, 1897, said plaintiff entered into a written con-

tract with the said attorneys, Page, and Powers, Straup & Lippman, agreeing to give said attorneys, as full compensation for their services in said cause, one-half of any amount that may be recovered, either by way of judgment or settlement of said cause, no settlement to be made without the consent of both parties to the agreement, and that the attorneys should advance the necessary court costs and witness fees. Said attorneys afterwards advanced the necessary court costs, which plaintiff testified the attorneys loaned him, because he had no money to enter suit with.

While the case was so pending and undetermined on issues joined, one Thomas Marioneaux, an attorney located at Salt Lake City, and who was acting for the London Guaranty Company, which company had insured the defendant company against damages by reason of accidents to its employés, and had agreed to indemnify it against such accidents, went to Payson, where plaintiff resided, and where Page, one of plaintiff's attorneys resided, and without consulting with plaintiff's attorneys, induced plaintiff to execute on March 9, 1898, a release and discharge of said defendant to said insurance company of and from all claims and demands, liabilities and causes of action against the said Ajax Mining Company in said cause pending against it for the injury sued for in said action, in consideration of the sum of $1,200 then paid by the said company to the plaintiff, and also executed a receipt in consideration of the sum of ten dollars, paid by said company to plaintiff, for all wages, loss of time, and damages on account of the accident sued upon, and afterwards procured an order to be entered in said court dismissing and discharging said action at the cost of the plaintiff. Thereupon the attorneys for the plaintiff, learning of said settlement and dismissal, entered a motion

based upon affidavit, to set aside such order of dismissal. The affidavit set up the contract for services, fraud on the part of the plaintiff, and said company, through its attorney, to procure said settlement and dismissal, to defraud the said attorneys without any notice to them, and that said plaintiff was irresponsible and unable to respond in damages, and that said attorneys were injured and. defrauded thereby. Upon a hearing, the court made an order setting aside the dismissal of said action, and allowing said plaintiff's attorneys to prosecute said cause of action, for the purpose of determining the amount of their fees and expenses. On March following the defendant company filed its supplemental answer, whereby it set up as a separate defense, such release, discharge and settlement made March 9, 1898.

The cause came on for trial for the purpose of determining the amount of compensation the attorneys were entitled to receive under their contract. Plaintiff introduced evidence showing defendant's negligence, and his consequent injury thereby, and claimed that the attorneys were entitled to a verdict, as their compensation in the case, for one-half of the amount the jury should find the plaintiff entitled to recover. The defendant introduced the release in evidence, and the plaintiff thereafter introduced the contract for services, which was objected to.

The court instructed the jury, in substance, among other things, that if they found that the settlement was made between the plaintiff and the defendant collusively and fraudulently and for the purpose of cheating the attorneys out of their compensation for services rendered and agreed to be rendered in the case, with knowledge of the rights of the attorneys and without notice to them, as claimed, the attorneys would have a right to prosecute the cause so as to determine the amount of their compensa-

tion for services as agreed, which would be one-half of the amount the jury found the plaintiff was entitled to recover from the defendant for his injuries, had the settlement not been made; that the contract was valid.

In this case the record shows that no motion for a rehearing was made. The case was tried upon the same pleadings and evidence given in the former trial, and a verdict and judgment was rendered in favor of the attorneys fixing their compensation at $2,500.

From this judgment defendant appealed.

After stating the facts, MINER, J., delivered the opinion of the court:

The appellant alleges that the court erred:

1. In setting aside the entry of dismissal of the case by the plaintiff.

2. In admitting in evidence over the objection of the defendant, the contract between plaintiff and his attorneys.

3. In instructing the jury that plaintiff's attorneys had a lien upon the plaintiff's cause of action for their fees. (This instruction, however, was not given.)

5. In instructing the jury that if the plaintiff was entitled to recover, their verdict should be for fifty per cent of the amount of damages which the plaintiff was entitled to recover, under their contract, if anything.

1st. The respondents—the attorneys—insist that the former decision is *res adjudicata;* that the same evidence based upon the same state of facts, is now before the court on this appeal as was on the former, and that all the issues and questions now before the court were decided adversely to the appellant on the former appeal, and that such decision is final in this case.

Upon this question we recognize the general rule to be

that a previous ruling and decision by the appellate court upon questions arising in a case before it is a final adjudication of those questions in that suit upon the same state of facts, from the consequences of which the court will not depart in a subsequent appeal. But this rule does not apply to the argument or to expressions or illustrations in the argument that are *obiter*, and not pertinent nor required for a disposition of the particular questions arising and decided in the case. The reasoning and illustrations do not constitute the decision, although important in determining what was decided. *Nixon* v. *Devine*, 80 Cal. 385; Elliott App. Proc. Sec. 578; *Barney* v. *R. R. Co.*, 117 U. S. 228; *Brim* v. *Jones*, 13 Utah, 440; *Silva* v. *Pickard*, 14 Utah, 245; *Venard* v. *Green*, 4 Utah, 458; *National Bank* v. *Lewis*, 13 Utah, 509; *Krantz* v. *Rio Grande*, 13 Utah, 1; *Leese* v. *Clark*, 20 Cal. 417; *Horn* v. *Jack*, 115 Cal. 29.

Upon an examination of the opinion in the former case it will be seen that the court held that the settlement and dismissal of the action, as shown by the proof, was collusive, fraudulent, and prejudicial to the rights of the attorneys, and was made for the purpose of cheating and defrauding them out of their just compensation for services rendered and agreed to be rendered in that action, of which fact the Guaranty Company, through its agents, had actual notice; that the order setting aside and vacating the satisfaction and dismissal of the action, so collusively and fraudulently obtained, could properly be made by the court under the common law, to protect one of its officers from the fraud of a client; that in permitting the attorneys to continue the prosecution of the case and proceed to judgment, so as to determine the amount of compensation due the attorneys for services rendered and agreed to be rendered by them in the case upon a written

agreement, was a proper mode of reaching the amount of such compensation, without reference to Sec. 135 R. S. 1898, under the proof of fraud in the case; that instead of pursuing this remedy the attorneys based their right to have the dismissal set aside and the case tried alone upon Sec. 135, but that this act was not retroactive in its operation, and did not affect the plaintiff's case based upon a contract made prior to its enactment.

This holding and opinion covers the right of the attorneys to have vacated and set aside the order of dismissal of the action, fraudulently and collusively obtained, for the purpose of cheating and defrauding them out of their fees and compensation for their services, (there having been no plea set up alleging the champertous provisions of the contract), and in allowing the attorneys to continue to prosecute the case to determine the amount of their compensation for services under the contract because of the fraud shown, as well as the holding that they had no right to proceed under Sec. 135. As to these matters the decision in the former case is decisive of this case. While that decision was a little too broad to come within the decisions of some courts as to attorneys liens on the cause of action for fees and compensation under the common law rule before judgment, yet it is clearly within the rule as applied to the costs of attorneys. The rule announced, however, has been carried in some cases to the extent that where plaintiff's attorneys have contracted in writing for compensation for services in a sum equal to a certain amount of the judgment recovered as a measure of their compensation of which the plaintiff has notice and who is shown to be irresponsible, and thereafter the plaintiff and defendant collusively, fraudulently and for the purpose of cheating the attorneys out of their fees, settle the case without their knowledge, it is held that the

attorneys have a vested interest in the claim and suit depending upon the amount ultimately realized by the plaintiff, and to establish the claim the court will permit the attorneys to continue in the name of the plaintiff to determine and satisfy their claim.

In *Stewart* v. *Hilton*, 19 Blatchford, 390, it is said, quoting from the syllabus:

" A. appeared on the record as attorney for S., as plaintiff in a suit at law founded on a contract, under an agreement between S. and his son, and A., that A. should have a permanent lien on the claim and the suit, for his fees, charges and disbursements, and that the control of the suit should be in the son, to secure the agreement. An irrevocable power of attorney, with power to employ other attorneys, was made by S. to the son. A. and the son had incurred liabilities and expenses, and A. had made charges, none of which had been repaid or reimbursed. S. afterwards agreed with the defendant to discontinue the suit, against the wishes of A. and the son. B. then entered an appearance for the plaintiff, the power of attorney was revoked, and, on the call of the case in court, A. desired to have it set for trial, and B. asked to discontinue it: *Held*, that A. and the son had a vested interest in the claim and the suit, and that A. must be allowed to control the proceedings in court, in the name of the plaintiff."

Substantially the same rule was announced in *Wright* v. *Wright*, 41 N. Y. Supr. Court Rep. 432, where it held that the attorney may so recover his costs and for his services. In this case the agreement was that the attorney should be paid for his services and costs out of the amount collected in the suit.

In *Terney* v. *Wilson*, 45 N. J. L. 282, it was held, in substance, that an agreement between an attorney and

his client that the attorney shall have a lien upon a certain judgment to be recovered, for a specified sum, as compensation for his services, constitutes a valid equitable assignment of the judgment *pro tanto* which attaches to the judgment as soon as entered.

In Jones on Liens, Sec. 223 and 224, it is said:

"Where a client agrees that his attorney shall have a paramount lien upon the claim in suit for fees, charges and disbursements, and to secure this agreement executes a power of attorney to a third person giving him the control of the suit, such power of attorney with the agreement operates to vest in the attorney an interest in the claim of which he cannot be divested by the client of his own motion, without satisfying his part of the agreement. It is the duty and practice of courts to protect attorneys in rights so acquired against hostile acts of those from whom they are acquired.

In Weeks on Attorneys, Sec. 369, p. 746, it is said: "But where the attorney's only chance of payment depends upon the result of the case, the courts will not allow even a release obtained from the plaintiff pending the proceedings to be set up to defeat the claim, unless the proceedings are taken by an unauthorized attorney, when they may be adjusted without the concurrence of the attorney."

In *Weeks* v. *Circuit Judges*, 73 Mich. 256, it is held: "An agreement between attorneys and their client that they are to be paid for their services rendered in the prosecution of a suit, and reimbursed for moneys advanced, from the proceeds of the judgment which should be obtained, operates as an assignment of the judgment to the attorneys to the extent of such claims, and until the same are paid the plaintiff can give no valid discharge of the judgment. The rule that courts look with favor upon a

compromise and settlement made by the parties to a suit, to prevent the vexation and expense of further litigation, only applies where all the rights and interests of all of the parties concerned, both legal and equitable, have been respected, and in good faith observed."

In *Reed* v. *Dupper*, 6 T. R. 361, the rule is settled that a party should not run away with the fruits of a case without satisfying the legal demands of his attorney. *Louisville R. R. Co.* v. *Wilson*, 138 U. S. 507.

See also: *Talcott* v. *Branson*, 4 Paige Ch. 500; *Ely* v. *Cook*, 28 N. Y. 365; *Rooney* v. *R. R. Co.*, 18 N. Y. 368; *Howard* v. *Town of Osceola*, 22 Wis. 433; *Williams* v. *Ingersoll*, 89 N. Y. 508; *Hutchinson* v. *Buchanan*, 15 Vt. 176; *In re* Wilson & Greig, 12 Fed. 235; *Hesiter* v. *Dem Mount*, 17 N. J. L. 438; *Koons* v. *Beach*, 45 N. E. 601; *Clark* v. *Smith*, 6 Mann & Granger, 1050.

We are not unaware of the line of authorities at common law holding that a lien for costs only attaches to the cause of action before judgment, and for fees and compensation after judgment. But Sec. 3683, Laws of 1888, which was operative at the time the contract was made, has modified the force and effect of the common law as to champertous contracts, and mode and manner of compensation was by it left to agreement between counsel and client, and no legal restrictions were placed on such agreement at the time this contract was made. *Croco* v. *Oregon Short Line*, 18 Utah, 321.

By this section, as we have seen, the question of the measure, mode and manner of the attorney's compensation was left to the agreement of the parties, express or implied. This power conferred necessarily included the power to take security for the payment of the fees and for the services rendered, and to be rendered in the case.

The use of the words "mode of compensation" seems to leave open to agreement the manner of obtaining or securing the payment of the fees agreed upon. The right to contract for the measure and amount of compensation, and the mode, manner or way of receiving or securing its payment, whether in cash, or security upon the judgment, or for a share of the proceeds of the judgment to be obtained was left to the agreement of the parties, express or implied. After entering into the contract with the plaintiff, the two corporations (the defendant and the indemnity company) could not by conspiring together, nullify and abrogate its terms and absolve the defendant from liability thereon. One party cannot be held to have such power over the vested rights or contract of another. The agreement being made either party had a right to enforce it as against the fraud of the other to his injury. Under Sec. 135 the lien attached without any express agreement as to the mode or manner of compensation.

While the facts present an extreme case of wrong, yet in determining the liability of the defendant we do not mean to disturb the so called common law rule, except as it is affected by statute. The contract gave to the attorneys the power to act in that case, and as full compensation for their services in the courts of Utah to recover plaintiff's damages, they were to have one-half of any amount received either by judgment or settlement. The plaintiff and defendant fraudulently conspired with the indemnity company to prevent the attorneys from fully carrying out their agreement, and collusively settled the case for $1,200, being for less than plaintiff's actual damages, so as to deprive the attorneys of their rights under the contract. This payment was an admission of the claim of the plaintiff against the defendant for $1,200 over and above the attorney's agreed compensation, of

which plaintiff was aware, and was quite as effectual in fixing the rights of the attorneys to their agreed compensation out of a judgment to be thereafter rendered and to determine it as if a judgment has already been rendered for the amount of plaintiff's full damages whereto an attorney's lien would attach. While plaintiff may have had a right to settle his damages, he had no right fraudulently to settle the rights of the attorneys under the contract which were known to the defendant, nor prevent them from doing as they agreed they should do to recover their compensation.

The attorneys had a right under the statute to proceed to judgment for the purpose of ascertaining the amount of their compensation under the contract, and when ascertained collect the same.

2d. The distinguished counsel for the appellant ably contend that the contract for services was against public policy, champertous and void, because it provided that the attorneys should receive one-half of any amount that might be recovered from the defendant on a judgment or settlement, and further provided that no settlement to be made without the consent of both parties. It is further provided that the parties of the second part shall advance the necessary court costs and witness fees."

The same question was raised on the motion to set aside the dismissal of the action, and when the contract was offered and received in evidence against the objection of the defendant, and again when the court refused the defendant's request for a non-suit. Practically the same question is also raised in the exceptions to the instructions of the court to the jury.

Sec. 3683, C. L. U. 1888, which was in force at the time this contract was made, provides that "the measure and mode of compensation of attorneys and counselors at law,

22 Utah—19.

is left to the agreement, express or implied, of the parties."

In *Croco* v. *Oregon Short Line R. R. Co.*, 18 Utah, 321, this court held that the common law was in force in Utah at the time of the adoption of our present constitution so far as ·compatible with our situation and government, but that its force and effect as applied to champertous contracts. was modified by the above section. We also held that under this section it' was competent and legal for an attorney and client to agree upon the attorney's compensation; that no legal restrictions were placed upon their agreement for compensation at the time it was made by Sec. 3683, and a right to enforce it was implied; that such compensation may legally be made contingent upon success in the case, and payable by percentage, share, or otherwise, out of the judgment or proceeds of the litigation, but that it was not competent to agree to pay the advance fees and costs of a suit thereafter to be commenced as a consideration for·such agreement, irrespective of the client's liability to refund the same.

This holding may properly be extended to cover this case, with the addition that in no case should the agreement be champertous or illegal, when the attorneys simply agree to advance the necessary costs and witness fees, under an agreement as testified to by plaintiff, "that the costs were advanced by his attorneys because he had no money to enter suit with; that the attorneys loaned him that much money."

It is not against public policy for an attorney to loan his client money with which to pay costs of suit, nor to advance the money necessary to carry on the suit, as needed, when such advances are made as a loan, with the express or implied understanding or agreement for its repayment, and there is no contract of indemnity against

the clients' liability to pay costs.  A contrary rule would embarrass the profession in its legitimate practice, and render attorneys a constant mark for dishonest clients. This is so because it is seldom that for some cause attorneys are not required to advance fees with which to commence suit and to pay officers and witnesses and other necessary expenses, when their clients may not be accessible, or when they may have a meritorious cause, but so impecunious as to be unable to meet, at the time, the necessary expenses.

In this view, we find no merit in the contention that the contract to advance the costs was illegal or champertous. But that part of the agreement contained in the contract providing that "no settlement to be made without the consent of both parties" was inoperative and against public policy as the law then stood, because settlement of causes and differences between persons are encouraged by the law.  While this sentence in the contract is against public policy and inoperative, yet the making of the contract with that provision in it is neither *malum prohibitum* nor *malum in se.*  No criminal liability attaches to the persons entering into such a contract, nor is the making of it reprehensible; neither is it always considered of questionable propriety.  The balance of the contract is not affected by it.  Therefore courts although refusing to enforce that part of such a contract, will allow compensation for valuable services rendered, under the remaining portion of it, which is separable therefrom.

In *Davis* v. *Webber,* 49 S. W. R. 825, the court said:

"While the contract sued on is against public policy, and therefore void, yet the making of such a contract is neither *malum prohibitum* nor *malum in se.*  It is not even of questionable propriety.  Therefore the courts, although refusing to enforce such a contract, will never-

theless grant compensation for valuable services rendered under it, upon the rule of quantum meruit."

In *Stearns* v. *Felker*, 28 Wis. 294, it is said: "There is almost or quite an unbroken line of authorities which hold that although attorney and client may have entered into an agreement in respect to the compensation for the services of the former, which is void for champerty, yet the attorney does not thereby forfeit his right to full compensation for his services, nor the client his right to the fruits of the litigation after paying for such services what the same are reasonably worth. Such is undoubtedly the law, and it harmonizes with the plainest principles of justice." 5 Am. & Eng. Enc. of Law (2d ed.) 828, 9. *Ziegler* v. *Mize*, 132 Ind. 403.

Under the circumstances of this case we are of the opinion that the objectionable feature of the contract was separable from and forms no part of an otherwise binding contract, upon which a liability arose for services rendered, and in good faith performed. With these exceptions the contract was authorized by Sec. 3683 heretofore referred to.

3d. Heretofore we have discussed the case independent of the pleadings.

In this case the attorneys for the plaintiff are seeking to set aside a fraudulent and collusive settlement and dismissal of this case, made between the plaintiff and the defendant and the London Guaranty Company, which company had insured the defendant against loss and damage by reason of accident and injuries to defendant's employés, and had agreed to indemnify it against damages arising from accidents such as was claimed in this action. The settlement was made in the interests of this company and the defendant. Plaintiff's attorneys seek to prosecute the suit for their own use and benefit in the

name of the plaintiff, because of the fraud practiced upon them by both plaintiff and defendant. The defendant's attorneys disclaim and are not chargeable with any agency in procuring the settlement, although the defendant is anxious and willing to receive the benefits, if any, arising from it, notwithstanding its collusive and fraudulent character.

The petition of the attorneys on motion to set aside the order of dismissal of the case, set out the contract between the plaintiff and the attorneys, including the objectionable features thereof, alleged fraud in the settlement of the case, and the irresponsibility of the plaintiff. After this the defendant amended its pleadings by setting up in its supplemental answer the settlement and compromise of said action and all claims arising therein, but in no way pleading the unlawful or champertous nature of the contract.

The plaintiff's attorneys contend that this contract is not between the plaintiff and defendant, but between plaintiff and his attorneys; that the defendant is not affected by it, and has no right to intermeddle in this suit, and that in no case can it do so; that neither can the defendant be heard without pleading by way of abatement or defense, the unlawful or champertous nature of the contract relied upon. We believe the attorneys for the plaintiff are correct in their contention.

In the case of *Croco* v. *Oregon Short Line*, 18 Utah, 311, this court held: "4th. If it be conceded that the common law, as modified, was in force at the time the contract was made, and that it was of a champertous character, and therefore void, yet it appears the contract was entered into between the plaintiff and his attorney, and that the defendant was in no way a party thereto. The defendant being a stranger to the contract, had no

right to question its validity in a collateral attack. There seems to be no sound reason in a rule which would allow a party to defeat a just cause of action because the opposite party has made a contract which is absolutely void, and which therefore cannot be enforced by either of the contracting parties. As to the defendants the rights of the parties are the same as if the illegal contract had never been executed. The champertous contract being void would divest the plaintiff of no cause of action. He is still the real party in interest. While the party to the illegal contract might be allowed to repudiate it, other persons not parties to it, should not be permitted to exonerate themselves from their just obligations on account of it. If, for instance, a defendant when sued upon his valid promissory note can avoid payment thereof, and interpose a bar to a recovery, by showing that the plaintiff made a champertous contract with his attorney for its collection, then is a meritorious plaintiff placed, to a large extent at the mercy of a dishonest debtor. Under such circumstances it does not lie in the mouth of the defendant to set up that fact for the purpose of escaping the payment of an honest debt or avoiding a just liability. The law in such a case will compel the defendant to perform his undertaking, and leave the question of champerty to be determined between the plaintiff and his attorney.

We are of the opinion that the defendant is not in a position to avoid a legal obligation because the plaintiff and his attorney may have entered into a champertous contract to enforce the obligation. *Small* v. *Railroad Co.*, 8 N. W. R. 437; *Hoffman* v. *Vallejo*, 45 Cal. 564; *Barnes* v. *Scott*, 117 U. S. 582; *Duke* v. *Harper*, 66 Mo. 51; *Thalheimer* v. *Brinkerhoff*, 3 Cow. 623; *Boon* v. *Chiles*, 10 Pet. 177; *Hilton* v. *Woods*, L. R. 4 Equity, 432; *Elborough* v. *Ayres*, L. R. 10 Equity, 367; *Allison*

v. *C. & N. W. Co.*, 42 Ia. 274; *Pike* v. *Martindale*, 91
N. W. R. 263; *Cartwright* v. *Bunnes*, 13 Fed. Rep. 317;
*Gage* v. *DuPuy*, 137 Ill. 652; *Hart* v. *State*, 120 Ind. 83;
*Ziegler* v. *Mize*, 132 Ind., 403; *Insurance Co.* v. *Way*,
62 N. H. 622; *Chamberlain* v. *Grimes*, 42 Neb. 701;
*Davis* v. *Settle*, 26 S. E. R. 557.

It does not appear that the liability or obligation of the
defendant is enlarged or affected by the contract in its
entirety, even if champertous and against public policy.
Whatever damages followed the injury complained of by
the plaintiff was a liability of the defendant. This liabil-
ity was irrespective of the alleged champertous contract,
or of the plaintiff's claim under it. Damages for the per-
sonal injuries was a question between plaintiff and the
defendant. How much of such sum recovered as dam-
ages was paid, or agreed to be paid to plaintiff's attorneys
for success in recovering it, was no concern of the defend-
ant. The liability was not increased if the attorneys
agreed to take all the damages; nor was it affected if they
took one-quarter of it. The amount of the attorney's
compensation depended upon the judgment, but the
amount of the defendant's liability did not depend upon
the contract of the attorneys, or their compensation.

The general rule applicable to this case, as held in
*Croco* v. *Oregon Short Line R. R. Co.*, 18 Utah, 324, is
that where such champertous contracts are questions be-
tween the parties who made them, a plea or answer of the
fact on the part of the defendant is necessary in order to
make the defense availing. It is just as necessary as it
is to plead the statute of limitations, or a fraud in proper
cases. Sec. 2968 Rev. Stat. 1898; *Croco* v. *Oregon Short
Line*, 18 Utah, 324; *Moore* v. *Ringo*, 82 Mo. 468; *Pike*
v. *Martindale, supra. Brumback* v. *Oldham*, 1 Idaho,
710; *Allison* v. *Railroad Company*, 42 Ia. 275; *Reed*

✱

v. *Insurance Company*, 61 Pac. 21, 21 Utah, 295; *Vimont* v. *R. R. Co.*, 69 Ia. 304; *McMullen* v. *Guest*, 6 Texas, 275; *Suit et al* v. *Woodhall*, 116 Mass. 547; Bliss on Code Pleading, Sec. 364; *Dixon* v. *Burke*, 6 Ark. 412; 2 Saunders on Pleading, 1041; 4 Enc. Pl. & Pr. p. 370.

This plea was not interposed by the defendant as it could have been, and therefore the defense that the contract was against public policy and void, and was champertous is unavailing to the defendant in this case.

The instructions of the court to the jury were in accordance with the views expressed herein and in the former opinion. We find no reversible error in the record. The judgment of the district court is affirmed, with costs.

BARTCH, C. J. concurs.

BASKIN, J., dissents.