ADDISON H. GIBSON, assignee of Compania Petrolera de Tepetate, S. A., v. E. NEAL GILLESPIE and JOSEPH F. GUFFEY.

[1] See *State v. McCullough*, 1 *Penn.* 274, 40 *A.* 237.

*(January* 25, 1928.)

PENNEWILL, C. J., and RICE, J., sitting.

*Josiah Marvel, Caleb S. Layton* and *James R. Morford* (of Marvel, Layton and Morford), and *Earl F. Reed* (of the Pittsburgh Bar, admitted *pro hac vice* on motion of Mr. Morford), for plaintiff.

*Aaron Finger* and *Henry Woog* (of the New York Bar, admitted *pro hac vice* on motion of Mr. Finger), for defendant, Gillespie.

*James H. Hughes, Jr.,* for defendant, Guffey.

Superior Court for New Castle County, January Term, 1928. ▆▆▆▆▆▆▆▆ No. 218, September Term, 1926.

During the progress of the trial, the following questions of law were passed on by the court:

▆▆ Mr. Morford, counsel for the plaintiff, offered in evidence the testimony of a witness given at a former trial of this case in which the jury had disagreed. It appeared that a subpoena had been issued for the witness in question, but had been returned *non est.*

In support of the offer, counsel cited *Jones on Evidence (Civil Cases)* 507, § 341.

Mr. Finger, counsel for the defendant, objected, saying:

"I never heard of testimony at a former trial being introduced into evidence. I have known it to be done by stipulation, but not over objection in a trial *de novo."*

PENNEWILL, C. J.: In *Jones Commentaries on Evidence (Blue Book),* vol. 2, § 336, it is said:

"It has long been settled as one of the exceptions to the general rule excluding hearsay that the testimony of a witness given in a former action or

at a former stage of the same action is competent in a subsequent action or in a subsequent proceeding in the same action, where it is shown * * * that a valid legal reason exists for his non-production, that the parties and questions in issue are substantially the same, and that such former testimony can be substantially reproduced upon the second hearing."

And at Section 342 of the same volume:

"The fact that a witness is beyond the jurisdiction of the State, or of the Court, is generally a sufficient excuse for not producing him. Hence, if it is shown that a witness is absent from the state, or a non-resident, or out of the jurisdiction of the court, * * * testimony given by him upon a former trial, and correctly preserved, is admissible in evidence on a subsequent trial of the same cause."

The same general principle has already been applied in this state when the witness who had previously testified had since died. *Kinney v. Hosea*, 3 *Harr.* 397; *Rogers v. Rogers*, 6 *Penn.* 267, 66 *A.* 374; *State v. Virden*, 2 *W. W. Harr.* (32 *Del.*) 32, 118 *A.* 597.

Mr. Finger: We still object to the admission of this testimony, on the ground that there has been no showing that the plaintiff was unable to produce the witness at this trial. The only thing shown is a technical compliance with due diligence by issuing a subpoena. It seems to me that some substantial reason for not producing him should first appear. We are entitled to have him here if they can produce him.

Mr. Morford: Mr. Vincent resides in Mexico but was here at the former trial. He was then in this country for his health, and for treatment by a physician but so far as we know he later returned to Mexico. Mr. Gibson received a letter from him last week from Tampico, Mexico.

Mr. Finger: There should be a showing that the testimony of this witness could not have been taken by deposition. According to Mr. Morford's statement, he knew after the last trial and certainly before this trial that he was in Mexico.

PENNEWILL, C. J.: We overrule the objection.

(2) After the plaintiff had rested his case, Mr. Finger, counsel for defendant, moved for a non-suit, saying:

The basis of the plaintiff's right to recover in this case is his title to the note, and the evidence clearly shows that such title is tainted with champerty. The authorities uniformly hold that, where

a plaintiff's title is tainted with champerty, the court will refuse its aid to enforce the supposed right. The note, the assignment thereof, and the resolution of the Tepetate Company in pursuance of which the assignment was executed, all of which papers are in evidence, show the facts and bind the plaintiff. He cited *Page on the Law of Contracts, vol.* 2, § 700; referring to definitions of "Champerty" in 4 *Blackstone's Com.* 135, and *Coke on Litt.* 368B; *Rev. Code* 1915, § 4778; *Williston on Contracts, vol.* 3, § 1715; *Stewart v. Welch,* 41 *Ohio St.* 483; *Johnson v. Hilton,* 96 *Ga.* 577, 23 *S. E.* 841; *Hudson v. Sheafe,* 41 *S. D.* 475, 171 *N. W.* 320; *Colville v. Small,* 19 *Ann. Cas.* (*Canada*) 515; *Keiper v. Miller* (*C. C.*), 68 *Fed.* 627; *Hamilton v. Gray,* 67 *Vt.* 233, 31 *A.* 315, 48 *Am. St. Rep.* 811; *Miles v. Mutual Reserve Fund Life Ass'n,* 108 *Wis.* 421, 84 *N. W.* 159, 163, 164; *Kent's Commentaries, vol.* 4, *page* 441, note "*d.*"

Mr. Morford: Without entering, at this time, into a discussion of the law on the subject of champerty, I direct Your Honors' attention to Mr. Gibson's testimony and our offer to prove certain facts, which were excluded on motion of defendant's counsel; and we, therefore, ask leave to open the case and to present the testimony of Mr. Gibson which Your Honors excluded.

Mr. Finger: We object. After the illegal nature of his claim has been made apparent and after he has closed his case, a plaintiff should not be given the opportunity to produce additional evidence in furtherance of an effort to change his status.

PENNEWILL, C. J.: The order of proof is in the discretion of the court, is it not?

Mr. Finger: Yes, sir; undoubtedly, but this is not a question of order of proof.

Mr. Woog: Your Honors have permitted to be read into evidence here, testimony given by Mr. Vincent at a former trial. That was admitted I suppose on the theory that there have been no new issues in this case. The plaintiff has introduced here a written assignment, and part and parcel of it is this resolution which is recited in the assignment; can the plaintiff, therefore, go back of

its written assignment which states that he takes this note under the terms specified in the resolution?

Mr. Finger: I submit that there is nothing in this case which calls for the court to go out of its way to assist the plaintiff in this fashion. Your Honors know something of the strenuous efforts we have made to get the records of the Tepetate Company here. This plaintiff stands here as an officious intermeddler. He had been out of the company for a number of years, and knew of an old note that the company had, and he said, "Give it to me and I'll sue at my expense and divide it with you." When we ask for the Tepetate Company's books he hides behind the fact that he is not the Tepetate Company, but merely the plaintiff and does not have their books. He, therefore, doesn't stand here with any real substantial rights that he can ask this court to protect, especially where the granting of that aid is purely a matter of discretion.

PENNEWILL, C. J.: We feel very clear that if the plaintiff can show that his arrangement was not champertous, he ought to be allowed to do so. We will allow the plaintiff to reopen the case and show the real consideration of the assignment, if he can.

After the testimony on this point had been concluded, counsel for the defendant, Gillespie, renewed his motion for a nonsuit, contending that there had been nothing shown to change the champertous character of the assignment.

PENNEWILL, C. J.: We decline to grant the nonsuit, but if you desire to raise the same question later, in your prayers, you will be permitted to do so.

The only unusual prayer submitted was one by the defendant asking the court to charge the jury:

"That if the jury believe from the evidence that the plaintiff's title to the note sued upon is based upon a champertous assignment thereof, that the jury should return a verdict in favor of the defendant."

Counsel for the defendant had argued the question of champerty at an earlier stage of the case and submitted no additional authorities in connection with this prayer.

Counsel for the plaintiff, in reply to defendant's prayer, submitted the following argument:

The contract is not champertous.

1. The Champerty. "Maintenance," says *Hawkins,* "seemeth to signify an unlawful taking in hand or upholding quarrels or sides, to the disturbance or hindrance of common right." *Haw. Pl. Crown* 393, *tit. "Maint."* "Where one officiously intermeddles in a suit depending in a court of justice which no way belongs to him by assisting either party with money or otherwise in the prosecution or defense of any suit." 1 *Russell on Crimes,* 139, 176.

The terms of this definition obviously do not include all kinds of aid in the prosecution or defense of another's cause; and it has, therefore, always been held not to extend to persons having an interest in the thing in variance; nor to persons being in any way of kin or affinity to either of the parties; nor to persons acting in the lawful exercise of their profession as counsel or attorneys at law. *Hawkins,* 398. Acts of support and countenance, of aid and assistance, by persons standing in any of these relations to the parties, do not amount to an "officious intermeddling" in the suits; nor "an unlawful taking in hand or upholding of quarrels to the hindrance of right." Such a maintenance is necessary and justifiable. So far from being a hindrance of right, it is essential to the support of right, and the attainment of justice. "And, therefore, it is no maintenance if counsel takes fees for his advice and assistance" nor "if an attorney expends his own money for his client, to be repaid." 5 *Comyn's Dig.* 19, *tit. "Maintenance"; 2 Inst.* 564.

Champerty is a species of maintenance. *Bayard v. McLane,* 3 *Harr.* at page 208:

"There is much reason, it thus seems, for the relaxation of the old doctrines pertaining to this subject, so that they may be adapted to the new order of things in the present highly progressive and commercial age. Necessity and justice have, accordingly, forced the establishment of recognized exceptions to the doctrine of these offenses. Among these may be enumerated the following instances: Relationship by blood or marriage will often now justify parties in giving each other assistance in lawsuits; and the relation of attorney and client; or the extension of charitable aid to the poor and oppressed litigant; and especially is an interference in a lawsuit excusable when it is by one who has, or honestly believes he has, a valuable interest in its prosecution. It is especially with the last-mentioned exception we are concerned in the present case, which, in our judgment, is controlled by it." *Gilman v. Jones,* 87 *Ala.* 691, 5 *So.* 785, 787, 7 *So.* 48, 4 *L. R. A.* at page 114.

See, also, *Smith v. Hartsell*, 150 *N. C.* 71, 63 *S. E.* 172, 22 *L. R. A.* (*N. S.*) at page 206; 5 *R. C. L., par.* 7, at page 274.

Even though the contract be champertous, the defendant cannot avail himself of this as a defense without having pleaded it. *Potter v. Ajax Mining Co.*, 22 *Utah* 273, 61 *P.* 999, 1004; *Currency Mining Co. v. Bentley*, 10 *Colo. App.* 271, 50 *P.* 920; *Barnes v. Weikel Chair Co.* (*Ky.*), 89 *S. W.* 222.

After directing the jury to retire to their room, but before delivering the charge, the court gave the following opinion on the question raised by defendant's prayer:

PENNEWILL, C. J.: The court having reached a conclusion respecting the question of champerty, we think it better to announce it now.

We have been requested by defendant, Gillespie, to instruct the jury to return a verdict for the defendant. This we decline to do. We have also been requested to charge the jury that, if they should believe from the evidence that the plaintiff's title to the note sued on was based upon a champertous assignment thereof, they should return a verdict in favor of the defendant.

(3) We have a statute in this state (*Rev. Code* § 4778) that makes champerty unlawful. A plaintiff will not, therefore, be permitted to prosecute an action in our courts if it clearly appears that he is guilty of champerty; and it would be the duty of the court to dismiss a case in which the evidence disclosed that the assignment of the cause of action sued on was tainted with champerty. This requirement is based on public policy which prevents a person from volunteering to prosecute a suit as assignee at his own expense, based on a cause of action in which the volunteer had no interest prior to the assignment.

(4) We have seen no clearer definition of champerty than that contained in the opinion of the court in the case of *Hamilton v. Gray*, 67 *Vt.* 233, 31 *A.* 315, 48 *Am. St. Rep.* 811.

"Champerty is an agreement between the owner of a claim and a volunteer that the latter may take the claim and collect it, dividing the proceeds with the owner, if they prevail; the champertor to carry on the suit at his own expense. This doctrine is based upon the ground that no encouragement should be given to litigation by the introduction of a party to enforce those rights which the owners are not disposed to prosecute."

(5) But the difficulty consists, not in telling what champerty is, but in applying the doctrine to the particular case. In the present case, the question to be determined is whether the plaintiff, Gibson, was a mere volunteer when he took an assignment of the note and instituted a suit for its collection, under his agreement with the Tepetate Company. A volunteer, we may say, in such case, is one who has no interest in the note sued on before its assignment to him for the purpose of collection, and takes an assignment of the note under an agreement with the assignor that he, the assignee, will collect the note at his own expense, and divide the proceeds with the assignor. But the plaintiff was not a volunteer, and not guilty of champerty, if he had a real and legal interest in the note that was assigned to him and upon which suit is brought.

The plaintiff contends that he had a real interest in the note sued on before its formal assignment to him by the company which the defendant claims was champertous and unlawful. He insists that while he was not a stockholder in the company at the time the note was transferred to him, he nevertheless had an interest in the note sued on, by virtue of an agreement between him and other stockholders previously made, and his title to the note was confirmed by the formal assignment of the note to him by the company.

(6) The defendant contends that, in determining whether the assignment of the note to the plaintiff by the company was or was not champertous, nothing can be considered but the paper of assignment. We think the inquiry cannot be so confined. On the contrary, we are of the opinion that any evidence may be considered that shows, or tends to show, that the agreement made by the plaintiff with the company and evidenced by the assignment, was not champertous. Any evidence which shows that the plaintiff had a real and proper interest in the note, would show that the assignment was not champertous. In such case, although the plaintiff agreed to pay all the costs of the suit brought to enforce collection of the note, and pay to the company a part of the moneys that might be collected, he was not a volunteer in the proposed litigation within the meaning of the law, but a proper party plaintiff in an action brought to enforce payment of the note.

There seems to be no dissent from the proposition that, if the plaintiff in a suit at law had an interest in the cause of action prior to and independent of the alleged champertous assignment or agreement, he has a right to maintain the action. He is not then a volunteer or meddler in stirring up litigation in which he has no legal or proper interest. That, after all, appears to be the test of champerty.

In *Gilman v. Jones*, 87 *Ala.* 691, 5 *So.* 785, 787, 7 *So.* 48, 4 *L. R. A.* 114, the court, in speaking of champerty, said:

"There is much reason, it thus seems, for the relaxation of the old doctrines pertaining to this subject, so that they may be adapted to the new order of things in the present highly progressive and commercial age. Necessity and justice have, accordingly, forced the establishment of recognized exceptions to the doctrine of these offenses. Among these may be enumerated the following instances: * * * and especially is an interference in a lawsuit excusable when it is by one who has, or honestly believes he has, a valuable interest in its prosecution."

In our own state, this court has said:

"Champerty is a species of maintenance." *Bayard v. McLane,* 3 *Harr.* 208.

(7) And in speaking of "maintenance," the court in the same case said:

"Maintenance * * * seemeth to signify an unlawful taking in hand or upholding quarrels or sides, to the disturbance or hindrance of common right. * * * Where one officiously intermeddles in a suit depending in a court of justice which no way belongs to him, by assisting either party with money or otherwise in the prosecution or defense of any such suit. * * * The terms of this definition obviously do not include all kinds of aid in the prosecution or defense of another's cause; and it has, therefore, always been held not to extend to persons having an interest in the thing in variance. * * * Acts of support and countenance, of aid and assistance, by persons standing in any of these relations to the parties, do not amount to an 'officious intermeddling' in the suits; nor 'an unlawful taking in hand or upholding of quarrels to the hindrance of right.' * * * So far from being a hindrance of right, it is essential to the support of right, and the attainment of justice."

Applying the above-mentioned principles to the present case, in which the plaintiff testified that he had a real interest in the note sued on, before the assignment of the note by the company, and finding no evidence to the contrary, the Court are constrained to hold that the assignment of the note in question to the plaintiff by the company was not champertous.

■ There is an utter absence of evidence showing that the plaintiff was guilty of stirring up litigation, or of officious intermeddling in the suit before the court. On the contrary, it appears from the uncontradicted evidence that the plaintiff had, or honestly believed he had, a substantial and legal interest in the note, and that suit was brought thereon to protect his own interest as well as the interest of the company.

The prayer for binding instructions, and the alternative prayer for the submission of the question of champerty to the jury, are, therefore, refused.

PENNEWILL, C. J., charging the jury:

This is an action brought by the plaintiff against the defendants on a promissory note for fifty thousand dollars, given by the defendants to the Compania Petrolera de Tepetate, S. A., a Mexican corporation, and bearing date the ninth day of September, 1922. The suit is for the full amount of the note with interest thereon at the rate of six per cent. per annum, from said ninth day of September, 1922, the date of the note, until the present time. The note sued on was assigned to the plaintiff by said company, the payee of the note, on the ninth day of March, 1926.

The defendants admit that they signed the note sued on, which was the ninth renewal of the original note given January 15, 1921. They also admit that they signed the original note and all the renewal notes given at intervals of sixty days.

As you have no doubt observed in following the testimony, there is one very important fact to be determined, and that is the character of the note sued on. You, of course, understand that each renewal note partook of the character of the original, and was the same in effect.

■ A statute of this state provides that

"Every negotiable instrument is deemed *prima facie* to have been issued for a valuable consideration." *Rev. Code* 1915, § 2668.

This presumption, however, may be rebutted by evidence, and does not apply if the note is shown by the evidence to be an accommodation note.

The plaintiff claims that the original note, dated January 15, 1921, and each renewal, was given to the company for a good and lawful consideration, and that the note sued on having been legally assigned to him, and never having been paid in whole or in part, he is entitled in this action to recover the full amount of the note with interest from its date.

The defendant, Gillespie, contends that the original note, and every note given in renewal, was an accommodation note, that is, a note given to the company solely for its accommodation, and without any obligation of payment on the part of the makers, the defendants. In other words, the said defendant contends that the note having been given to the company solely as an accommodation, it was without consideration, and is uncollectible by the plaintiff assignee, just as it would have been by the original payee, the company.

A statute of this state also provides that

"An accommodation party is one who has signed the instrument as maker * * * without receiving value therefor, and for the purpose of lending his name to some other person." *Rev. Code* 1915, § 2673.

It is also the decisional law of this state that absence or failure of consideration is a good defense by an accommodation party to an action on a note, as between the parties to the note or in a suit by any person who is not a holder in due course.

A note assigned when overdue is subject in the hands of the assignee, to every infirmity which it had when in the hands of the payee. One who takes negotiable paper after maturity takes subject to every defense which could have been urged when the paper was in the hands of the original payee. Absence or failure of consideration is matter of defense as against any person not a holder in due course. This law is not questioned by the plaintiff, and means, when applied to this case, that, if the note sued on was given by the defendants to the company solely as an accommodation, and without consideration, the note could not have been collected by the company, the original payee, and that the plaintiff, who is the assignee of the company, cannot collect it because he is in no better position than the original payee.

But if you believe that the note was not given as an accommodation to the company, but on the contrary, was given to the company for a lawful consideration, and to be paid by the makers to the company, then the defendants, the makers, were liable for the payment of the note to the company before its assignment to the plaintiff, and are now liable to the plaintiff since the assignment. And we instruct you that by "consideration for a note" is meant not only something actually delivered to the makers for the note, but any indebtedness or liability of the makers to the payee, for which the note is given, would be a lawful consideration.

In your consideration of this case, you should not lose sight of the fact that the important issue is the real character of the note in suit. Was the note an accommodation note, that is, given simply as a favor and accommodation to the company, the payee, or was it given to the company for a consideration? The danger is that in trying to consider all the testimony, which is very considerable, you may become confused respecting the most important issue.

The plaintiff contends that the note was given for a consideration, namely, an option on a large amount of stock of the Atlantic Gulf Oil Corporation, at a certain price per share, which option the defendants accepted, and the plaintiff says they did not pay for the stock because of the great decline in its price or value. For that reason, the plaintiff claims the note given in part payment for said stock was not paid. Gillespie, one of the defendants, and who is defending this suit, insists that the note was purely an accommodation note, being given as an accommodation to the Tepetate Company and without any consideration. This defendant admits that the stock upon which he and Guffey had an option was to be taken and paid for if certain other persons who also had an option on similar stock were required to pay for their stock. Guffey, the other defendant, admits that the note sued on was given for a consideration, that it was not an accommodation note, and that he and Gillespie are liable thereon.

The Court are not allowed to comment on the testimony, and it is of such character that we shall not undertake to

review it, because it might seem like commenting. We hope, therefore, that the jury will be able to remember and understand the testimony with sufficient clearness to determine whether the note sued on was a promissory note as it is commonly understood, that is, a note for which the makers have received some consideration and which they expect to pay, and are liable to pay, or whether it is what is called an accommodation note, that is, a note given purely for the accommodation of the party to whom it is given, and which the makers are not expected to pay, and are not liable to pay in any event.

After all, whether a promissory note is or is not an accommodation note, depends very largely upon the intention of the parties, and in ascertaining the intention the jury have a right to consider anything said or done by the parties respecting the original note or any renewal that indicates whether the note was expected to be paid by the makers or not, or whether they were legally bound to pay the note.

Your verdict should be for that party, plaintiff or defendant, in whose favor there is a preponderance, that is, a greater weight of the evidence. Your verdict may be for the plaintiff or defendants, both or either of them, as the evidence shall warrant, but whatever it may be, it must be based on the evidence in the case, and on nothing else. If you believe from the weight of the evidence that the note in suit, signed by both defendants, was not an accommodation note, but was given for lawful consideration, and both defendants are liable thereon, your verdict should be against both defendants.

(The court then charged on conflict of evidence.)

If your verdict should be for the plaintiff, it should be for the full amount of the note with interest from the date thereof.

Note. While Gillespie and Guffey were nominally joint defendants, they were, in fact, antagonistic, each having different counsel, and Guffey testifying in favor of the plaintiff.